## WRIGHT v. VOCALION ORGAN CO.

(Circuit Court of Appeals, First Circuit. October 31, 1906.)

No. 644.

1. CONTRACTS—VALIDITY—SALE OF FUTURE INVENTIONS.

The rule applied that a contract by an inventor, in consideration of his employment for a term of years at a salary, to assign to his employer a half interest in all inventions made by him during the term, is not contrary to public policy.

2. SPECIFIC PERFORMANCE—POWERS OF COURT—MODIFICATION OF CONTRACT.

In decreeing the specific performace of a contract, a court of equity may adapt it to conditions which were not foreseen by the parties when it was made, by requiring the complainant to assent to such modifications and limitations as justice requires in view of such new conditions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 424.]

3. CONTRACTS—CONSTRUCTION—CONTRACT FOR INTEREST IN FUTURE INVENTIONS.

Complainant was a corporation engaged in the manufacture of musical instruments, including organs, and defendant was its superintendent of factories and had made certain inventions relating to organs. A new contract was made between them by which, in consideration of an increased salary for a term of five years, it was provided, in clause 2, that a one-half interest in all improvements or inventions made by defendant during the term "in or relative to organs, both keyed and automatic," should be assigned to complainant, and they should be patented at complainant's cost. By clause 4 it was provided that complainant should have the exclusive right to purchase and use improvements and inventions made by defendant during the term "in self-playing pianos or self-playing devices for playing pianos," on such terms as should be agreed upon. Defendant during the term made and patented certain inventions which were applicable alike to organs and to self-playing pianos. *Held*, that such inventions were within the contract, and complainant was entitled to an assignment of a half interest therein, or a perpetual license to use the same without further payment, but only in so far as they related to organs, as expressed in the second clause of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 859.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 137 Fed. 313.

Benjamin Phillips (Alfred H. Hildredth, on the brief), for appellant.

George B. B. Lamb and George D. Beattys (Alexander P. Browne, on the brief), for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This bill was brought in the Circuit Court by the Vocalion Organ Company, a corporation organized under the laws of the state of New Jersey, against Morris S. Wright, a citizen of the state of Massachusetts. The decree was for the complainant, and the respondent below appealed to us. It is somewhat difficult to make a concise statement of the facts; and therefore, for that pur-

pose, we adopt that given in various extracts from the opinion of the learned judge of the Circuit Court as follows:

"This suit in equity is brought to compel the defendant to assign to the. complainant a one-half interest in certain improvements, inventions, and patents in or relative to organs, in accordance with the terms of a written contract made by the parties on May 15, 1901. The suit is brought also to restrain the defendant, his heirs, executors, administrators, or assigns, from selling or assigning any interest in said inventions, improvements, and patents to any person other than the complainant during the life of the contract.

"At the time of entering into the contract the complainant was engaged in the business of manufacturing and selling musical instruments, including organs, both keyed and automatic. The defendant was the superintendent of the complainant corporation at a salary of $3,600 per year.

"Although only the second and fourth paragraphs of the contract are brought before the court for construction, it is material for certain purposes of the inquiry to examine the whole contract. The contract is as follows:

"'Agreement made this fifteenth day of May, in the year nineteen hundred and one, between the Vocalion Organ Company, a corporation organized and existing under the laws of the state of New Jersey, transacting business at Worcester, in the county of Worcester, commonwealth of Massachusetts, and in the city of New York, state of New York, party of the first part, and Morris S. Wright of Worcester, aforesaid, party of the second part, witnesseth:

"'That for and in consideration of the mutual covenants and other consideration hereinafter expressed the parties hereto covenant and agree as follows:

"'First. The party of the first part covenants and agrees to employ the party of the second part and does hereby employ the party of the second part, and the party of the second part covenants and agrees to accept and hereby does accept exclusive employment of the party of the first part as superintendent of factories of the party of the first part.

"'Second. The party of the second part covenants and agrees that an undivided one-half part of the whole right, title and interest in and to all inventions or improvements made by him during the term of this agreement, in or relative to organs, both keyed and automatic, shall be the property of the first part, and, immediately upon making any such inventions or improvements, the party of the second part covenants to apply for letters patent of the United States therefor, and for such foreign patents therefor as the party of the first part may desire, and to make, execute and deliver all such applications, specifications, drawings and other documents as may be necessary to obtain such letters patent; and the party of the second part further covenants to execute, acknowledge and deliver to the party of the first part a proper assignment for record of an undivided one-half interest in each such invention and in the letters patent when issued—all, however, at the proper 'cost and expense of the party of the first part or its successors and assigns. The party of the second part further covenants not to sell or assign his undivided one-half part in and to any of the above-mentioned inventions, improvements and letters patent, which part shall be and remain the exclusive property of the party of the second part, his heirs, executors and administrators, until the expiration of the term of this agreement.

"'Third. The party of the second part further covenants and agrees that he will without further consideration than is herein expressed assign and transfer to the party of the first part letters patent of the United States number 509,506 for improvements in reed and pipe organs and will upon request of the party of the first part execute and deliver to the party of the first part a proper assignment of said patent for record.

"'Fourth. The party of the second part further covenants and agrees to grant and does hereby grant unto the party of the first part the exclusive right to purchase and use inventions or improvements made by him during the term of this agreement, in self-playing pianos or self-playing devices for playing pianos, upon such terms as to price or royalty and other conditions as may be mutually agreed upon; and the party of the second part further covenants that he will not sell, assign, transfer or in any way dispose of any

such invention or improvement to any other corporation or persons than the party of the first part during the term of this agreement.

* * * * * * * * * * *

" 'Seventh. It is further covenanted and agreed that this agreement shall be deemed to be in full force and effect from and after the first day of July, nineteen hundred, and until the first day of July, nineteen hundred and five, and shall terminate on said first day of July, nineteen hundred and five.

" 'In witness whereof,' " etc.

"The testimony tends to show that, previous to making the contract, Mr. Tremaine, the president of the complainant company, had many conversations with the defendant in regard to his experience and ability in manufacturing, improving, and inventing musical instruments; that the defendant gave the assurance that he could develop and improve the different instruments manufactured by the complainant company; that, in view of these representations made by the defendant, the complainant company was induced to make the agreement now in suit, providing for the increase of the defendant's salary from $3,600 per year to $5,000 per year, with an added percentage based on the value of the output; and that the arrangement under the contract was to continue from July 1, 1900, to July 1, 1905.

"The testimony tends to show that the defendant made improvements and inventions during the term of the agreement, and applied for and obtained letters patent. The complainant requested the defendant to assign to it an undivided one-half interest in these improvements and letters patent, alleging that they were improvements or inventions in or relative to organs both keyed and automatic. The defendant refused to do this.

"The evidence tends to show that the defendant made certain inventions in the musical art, for which application for letters patent was made and allowed. The testimony also tends to show that all these alleged improvements and inventions were applicable equally as well to organs as to piano-players. The complainant contends that all these improvements and inventions come under the terms of the second paragraph of the agreement, because they are improvements and inventions 'in or relative to organs both keyed and automatic.' And the complainant insists that these inventions and patents should be transferred to it, notwithstanding the fact that they also relate to self-playing devices for playing pianos. The defendant insists that, so far as these inventions relate to organs both keyed and automatic, and also to self-playing pianos or self-playing devices for playing pianos, they should be excluded from the consideration of the contract; that the second paragraph should be held to embrace inventions which relate exclusively to organs both keyed and automatic; and that the fourth paragraph should be held to embrace exclusively inventions in self-playing pianos or self-playing devices for playing pianos."

## After thus stating the case, the learned judge concluded as follows:

"The patents put in evidence in the case do not seem to us to embody inventions simply and only upon piano-players according to their terms and their titles. They appear to relate as distinctly to organs as to pianos or piano-players or devices for playing pianos. The interpretation sought by the defendant would eliminate all or nearly all the alleged inventions made by the defendant, and leave no improvements or patents upon which the contract is to operate. It seems to us this is an unreasonable interpretation of the contract, and an interpretation not warranted by the evidence in the case. We believe the interpretation which we have given in consonant with the terms of the whole contract, the evident intention of the parties and with their action in the premises.

"Under this interpretation an undivided half part of all inventions or improvements made by defendant during the term of the agreement, namely, from July 1, 1900, to July 1, 1905, in or relative to organs, both keyed and automatic, must be transferred to the complainant, even though those improvements and inventions may also relate to other musical instruments. The defendant should also assign to complainant an undivided half part of all such inventions or improvements, for which applications for letters patent have

been made, as set forth in paragraph 4 of defendant's answer, except those on which letters patent have been already issued. The defendant should also assign to complainant all inventions for which any other applications for letters patent have been made both in the United States and foreign countries during such term. He should also assign to complainant a half interest in the letters patent named in the stipulation of the parties in the case, and all other letters patent embodying such inventions or improvements. The defendant should also apply for letters patent, both foreign and domestic, and should execute assignments of his applications to the complainant."

The decree entered in accordance with this opinion was so phrased as, to use its own language, to enjoin the respondent "from directly or indirectly interfering with, or preventing or hindering or annoying, the Vocalion Organ Company, complainant herein, or its successors or assigns, in the manufacture or sale of any musical instrument or instruments, or any part or parts thereof, containing or embodying in whole or in part any one or more of the defendant's inventions or improvements hereinbefore set forth, or any portion of the same; and also in the use of said inventions and improvements, or any of them, in any way complainant may see fit." The fifth error assigned makes this phraseology the basis of an alleged distinct error. It was too broad, in that it in effect protected the Vocalion Organ Company, not only so far as its lawful rights were concerned, but to such an extent as to cover organs and pianos which might contain elements which the Vocalion Organ Company had no lawful right to use, if only they contained some of which it was the proprietor. Whatever difficulty there is in this part of the decree can be obviated on a reframing of it by the Circuit Court in pursuance of the judgment which will be entered in this case. Probably what is apparently objected to was a mere inadvertence which would not have occurred if the respondent below had insisted on his right to have a draft decree in accordance with the rules of the Circuit Court, thus giving an opportunity for correcting any mere matters of phraseology.

The other errors assigned are of so general a character that it is difficult for us to apply them. With the rest, they relate to numerous patents the peculiarities of which have not been categorically explained; and, consequently, for us to attempt to investigate them would throw on us a burden which, on the whole, we do not find it necessary to assume, as we are of the opinion that the substantial case comes down to a single proposition.

Nevertheless, we are, perhaps, justified in giving some attention to incidental propositions which were argued before us. Any suggestion that a contract of the character in question is ordinarily contrary to public policy, and therefore cannot properly be enforced, is contrary to the rules of law as now settled, as shown by us, in Reece Folding Mach. Co. v. Fenwick, 140 Fed. 287, 2 L. R. A. (N. S.) 1094. Various propositions made by the appellant, and grouped under the more general one that the Circuit Court erred in ordering the respondent alone to perform, are not only not to be regarded as within the terms of assignments of errors of the general character we have before us, but, as applied to the proofs in this record, they are purely academic. The claim that the Vocalion Organ Company has not performed its

own covenants contained in the contract in litigation, to which so much attention is given by the appellant, is, on this record, a mere question of the burden of proof, without the slightest indication that the topic was brought to the attention of the Circuit Court. Therefore it cannot merit any discussion here. One of the errors assigned relates to four specific patents named therein, and alleges they were not put in evidence. There does not seem to have been any formal putting in evidence; but, as the Circuit Court regarded them as in evidence, and as no objection was there made on that point so far as the record shows, this point cannot be made here. Indeed, there can be no question that a fair understanding of an agreement found in the record indicates that the parties regarded them as in the case. Some of the patents are referred to by the appellant with a claim that they do not make any mention of organs. It will appear further along in this opinion that this would be immaterial so long as they cover musical instruments, and it is plain on their face that they may be available for organs. Also, it is objected that one of the patents is merely for inclosing cases; but it is shown that these are peculiarly for use with automatic instruments, so that it is entirely within the expression in the contract "relative to organs."

This brings us to the only substantial question, and this the appellant introduces to our attention by the just assumption that there is foundation for a finding that, at least, some of the inventions in question are applicable as well to pianos as to organs. He claims that the contract, so far as it is important for us, covered only inventions which related exclusively to organs, and that it made no express provision for those which related both to organs and pianos. It is to the latter class of inventions, that is, those which are useful for both organs and pianos, that he contends that some, if not all, of those in controversy belong. As we have already observed, the case, as submitted to us, does not sift out categorically the various improvements in question, so as to enable us, without too much labor, to ascertain whether all the patents and applications in controversy are of that class, or only a portion, and, if a portion, what portion. It being plain that at least some of them are, we will remit to the Circuit Court the working out of the details in reference thereto.

The complainant contended in the Circuit Court that all the inventions of the class in question came under the terms of the contract in litigation. The respondent contended that such inventions should be entirely excluded, and that the contract has no relation to them whatever. In the course of the opinion, the court stated that the interpretation of the respondent was too narrow, and contrary to the intention of the parties, which was undoubtedly correct. On the other hand, the decree directed that an undivided half of each of all such inventions must be assigned, and the injunction was ordered accordingly. This was, perhaps unintentionally, too broad.

Paragraph 4 of the contract makes it plain that the complainant was not to have the free use of the respondent's inventions, except "in or relative to organs," as expressly set out in the second paragraph; and there is nothing to show that the complainant has made any offer

for compensation with reference to pianos according to paragraph 4, so as to entitle it to use the respondent's inventions in connection with them.

The solution is a simple one. Apparently the position is one which the contract did not foresee, as often occurs; that is, that there would be inventions covering organs which were also appropriate for other musical instruments. Under such circumstances, whatever the common law might do, equity has no difficulty in adjusting itself to the unexpected conditions. Here it can decree that there should be given assignments, or perpetual licenses, so far only as concerns what is expressed in the second paragraph of the contract; that is, "in or relative to organs, both keyed and automatic." In doing this, equity does not make a new contract, but it merely applies the existing one to the unexpected conditions. It also avails itself of the fundamental rule that those seeking equity must do equity, and so it grants relief to the complainant only on its assent to such limitations and qualifications as will prevent injustice. The practical application of this maxim to cases of the class before us has been illustrated an indefinite number of times. Oddly enough, two decisions at the same early term of the Supreme Court give such an illustration and also a qualification. Hunt v. Rousmanier, 1 Pet. 1, 7 L. Ed. 27, declares that equity cannot make a new contract; but Mechanics' Bank v. Lynn, 1 Pet. 376, 383, 7 L. Ed. 185, states the general rule which controls this case, as follows:

"But the court ought not to decree performance according to the letter when, from change of circumstances, mistake, or misapprehension, it would be unconscientious so to do. The court may so modify the agreement as to do justice as far as circumstances will permit, and refuse specific execution, unless the party seeking it will comply with such modification as justice requires."

Our conclusion is that the phraseology of the decree which is complained of in the fifth alleged error assigned should be corrected as we have stated, and that, so far as concerns the second paragraph of the contract in issue, the decree should be so modified that assignments, or, if found necessary, perpetual licenses, be ordered, and that whichever are ordered, licenses or assignments, they be so limited as not to go beyond the purposes of the contract as we have already explained them; and all injunctions must be likewise so limited.

The decree of the Circuit Court is reversed; the case is remanded to that court, with directions to enter a modified decree in accordance with our opinion passed down this day; and the appellant recovers his costs of appeal.