[Civ. No. 10559. First Appellate District, Division Two.—February 25, 1938.]

HERCULES GLUE COMPANY, LTD. (a Corporation), Respondent, v. JOHN F. LITTOOY, Appellant.

184

Walter H. Linforth, William M. Cannon, William M. Abbott, Cyril Appell, Ivores R. Dains and Herbert Chamberlin for Appellant.

Byrne, Lamson & Jordan for Respondent.

GRAY, J., *pro tem.*—The complaint sought a decree compelling appellant to specifically perform his promise contained in the contract of the parties, dated December 26, 1928, by assigning to respondent a patent for a chemical formula, called "Fluxit 4-x". The cross-complaint asked (1) an accounting of a joint venture, which it alleged had been created by the parties' prior contract of August 27, 1924, (2) a declaration that respondent held, in trust for appellant, a patent for a formula, known as "Fluxit No. 1", which appellant had previously assigned to respondent, and (3) the reasonable value of appellant's services as an inventor. The controversy arose from the conflicting interpretations which the parties gave to the provisions of these contracts. Appellant appeals from the judgment which granted to respondent a decree of specific performance as prayed in its complaint and denied to appellant any of the relief requested by his cross-complaint. He accepts most of the findings of fact but claims a few are contrary to the preponderance of the evidence.

Before their association, the parties had separately engaged in the sale and manufacture, according to an unpatented formula, of a chemical compound, called a "spreader" from its use to spread insecticides, mixed with it, upon trees sprayed with the mixture. On August 27, 1924, they executed a contract wherein appellant agreed to devote his entire time for three years to the sale of respondent's spreader in six northwestern states, to supply respondent with any

information collected by him which would assist in the sale of spreaders and to assign the exclusive right to use the trade-name of his spreader and respondent promised to pay him a monthly salary of $200, traveling expenses and one-half of the profits on his sales. Disputes arose as to appellant's claim for increased participation in the profits because of his efforts beyond the requirement of the contract in improving the composition of the spreader. On December 26, 1928, they executed a mutual release of all claims which each asserted against the other. At the same time, they entered into a second contract by which appellant was to be paid for five years a monthly salary of $250, traveling expenses and additional compensation figured on the quantity of spreader sold by either party. By the terms of this contract, appellant agreed that he would devote his entire time, knowledge, skill, best efforts and services to the work of respondent as it might direct; that all patents, processes or formulas, pertaining to spreader, which he invented, developed or perfected during his original and present employment, should be the property of respondent and that he would, on demand, execute any assignments, transfers or other instruments necessary to perfect respondent's title thereto. He further agreed that he would not, during its life or subsequently, divulge to any person or use for his own benefit, any secret processes or formulas invented, developed or perfected by him or respondent between October 1, 1924, and the termination of the agreement.

In 1929, appellant invented a new formula for a spreader, called "Fluxit No. 1", and early in the next year assigned to respondent letters patent therefor. This formula he sought to recover by his cross-complaint. At first the spreader, made according to this formula, was a success, but later, after new ingredients were added as a disguise, became a failure. To remedy this, appellant ceased his selling efforts and worked in respondent's laboratory exclusively from the early part of 1931 until he voluntarily quit his employment on May 4, 1933. While experimenting in the laboratory, he discovered the basic principle of a neutral spreader which he named "Fluxit 4-x", but obtained letters patent therefor after the termination of his employment. This patent the judgment, in accordance with his agreement, ordered him to assign to respondent.

■ Equity will specifically enforce the performance of a contract to convey patent rights. (*Coleman* v. *Dawson,* 110 Cal. App. 201 [294 Pac. 13].) But specific performance cannot be had of "An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." (Civ. Code, sec. 3390.) Nor against a party, "If it is not, as to him, just and reasonable." (Civ. Code, sec. 3391.) ■ An employee's agreement in the contract of employment to assign patents to his employer is specifically enforceable as to patents, clearly within its terms, as strictly construed against the employer. (*Wright* v. *Vocalion Organ Co.,* 148 Fed. 209; *Hildreth* v. *Duff,* 148 Fed. 676; *Conway* v. *White,* 9 Fed. (2d) 863.) ■ Since, admittedly, "Fluxit 4-x" pertained to spreaders, and was invented by appellant during his employment, he was clearly obligated to assign the patent therefor in accordance with the express terms of his agreement that all patents, pertaining to spreaders, invented by him during his employment should be respondent's property and that he would execute any assignments necessary to perfect its title thereto.

■ In an attempt to raise an uncertainty in his obligation, appellant argues that other provisions of the contract which based the amount of his additional compensation on the volume of sales and statements in prior negotiations which referred to his selling, show that the contract employed him as a salesman and not as an inventor. The forepart of this argument erroneously assumes that only his sales determined his additional compensation whereas such compensation was based upon all sales, including those made by respondent. Any doubt as to the character of the services, which he was hired to perform is removed by the unambiguous language of the provision, wherein he agreed to devote his entire time, knowledge, skill, best efforts and services to the work of respondent as it might direct. ■ In support of the second premise of this argument, he contends that section 1647 of the Civil Code authorizes the use of such prior negotiations to explain the meaning of the contract. But the rule of evidence, embodied in this section and also in section 1860 of the Code of Civil Procedure permits the introduction of evidence of prior negotiations to remove an uncertainty in the language of a contract but not to raise a doubt in the meaning of its clear terms. (*Barnhart Aircraft, Inc.,* v. *Preston,* 212 Cal. 19 [297 Pac. 20].) Since such prior negotia-

tions could not change the meaning of the contract it is useless to state their contents in order to determine the correctness of appellant's construction thereof.

■ "Fluxit 4-x" was invented late in appellant's employment and, consequently, was not marketed during the life of the contract so as to give him additional compensation from its sales. For this reason, he argues that his agreement to assign the patent was unjust and unreasonable and therefore its specific performance was prohibited by section 3391 of the Civil Code. He does not claim that the consideration for his promise, as specified in the contract, was inadequate at the inception of the contract. Such consideration he had received as respondent promised. His acceptance of it constituted a waiver of any claim of inadequacy. (*Peters* v. *Binnard,* 219 Cal. 141 [25 Pac. (2d) 834].) But he contends rather that subsequent events made such consideration inadequate at the time he was required to fulfill his promise. His argument is unsound, for inadequacy of consideration which will prevent specific performance of a contract must be determined as of the date of its execution and not as to the date of its performance. (*O'Connell* v. *Lampe,* 206 Cal. 282 [274 Pac. 336].)

■ Appellant's right to an accounting and a declaration of trust, as prayed in his cross-complaint, depends upon the nature of the relationship between the parties which their contract of August 27, 1929, created. Appellant argues that, by this contract, the parties engaged in a joint adventure. Respondent contends that the contract merely provided for respondent's employment of appellant. The court found in accordance with respondent's contention. Appellant's right to recover the reasonable value of his services as an inventor depends upon the extent of the services, which he promised to perform in the contract of December 26, 1928. Respondent asserts and appellant denies that his services as an inventor were included within the services described in the contract. This difference arises from the conflicting interpretations of the contract which have been previously considered. Appellant further argues that he is entitled to the reasonable value of his services in inventing "Fluxit 4-x" upon an implied contract since the parties had previously abandoned their written contract. On all of these controverted issues, the court found in favor of respondent. Ap-

pellant assails these findings as contrary to the preponderance of evidence. Since the trial court is the exclusive judge of the weight and effect of evidence and of the credibility of witnesses, an appellate court may not change the findings so as to conform to its opinion on such matters. Hence the useless task of reviewing the evidence necessary to a consideration of appellant's criticism will not be undertaken.

The judgment is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1938. Langdon, J., voted for a hearing.