## HEBBARD v. AMERICAN ZINC, LEAD & SMELTING CO. et al.

No. 192.

District Court, W. D. Missouri, S. W. D.

Feb. 12, 1946.

Norman, Foulke & Warten, and Helen Redding, all of Joplin, Mo., for plaintiff.

Paul E. Bradley, of Joplin, Mo., Allen McReynolds, of Carthage, Mo., Paul E.

Bradley, of Joplin, Mo., and Charles M. Seymour, of Knoxville, Tenn., for defendant.

REEVES, District Judge.

This is an action for rescission of a contract to transfer a patent and for an accounting of profits. The controversy originated in the mystic and cryptic words "and other valuable considerations" contained in the contract.

Claiming that the obligations of the contract had not been met by the defendant Minerals Beneficiation, Incorporated, and, that, as its co-defendant, American Zinc, Lead and Smelting Company, a corporation, had become the exclusive licensee under a grant from it, plaintiff deemed it proper to join both of them for the purpose of effectuating the results desired. It is asserted by the plaintiff that, as an employee of the defendant Minerals Beneficiation, Incorporated, he "conceived, made, invented, discovered and constructed a process and apparatus for separating and classifying fragmentary materials of differing specific gravities, which said process and apparatus is more particularly described and embodied in United States Patent No. 2,176,189;" that, by his agreement he became bound not only to disclose to his employer, or its designated agent, his conception, but furthermore, that he was obliged, upon request, to transfer his conception and invention to the said defendant; that the considerations of the contract were diverse, closing with the ambiguous term "and other valuable considerations," and that these words were interpreted by the parties at the time to mean the payment of a purchase price to plaintiff by the said defendant or its successor in the event his conception and invention should become practical and efficient.

Alleging that the invention has been both practical and efficient and extremely profitable, plaintiff says that the defendant Minerals Beneficiation, Incorporated, and its co-defendant, American Zinc, Lead and Smelting Company, as sole licensee, have disregarded their duty and obligation under the contract to pay him substantially for his property in the patent and that such failure warrants this action for a rescission of the contract and for an accounting.

The defendants separately substantially deny these averments.

It appeared from the evidence that the plaintiff, in the summer of 1931, became acquainted with Mr. C. Erb Wuensch who "had a laboratory at Waco, Missouri," near the city of Joplin, Missouri, and who was then engaged in an endeavor to perfect a process and apparatus precisely of the kind covered by the patent pleaded by plaintiff; that the plaintiff, being an engineer and an unusually competent draftsman, was employed by Mr. Wuensch in his laboratory at Waco, and, later, at Joplin, to which place the laboratory was removed; that early in the year 1932 a large sum of money was made available for laboratory experimentation along the lines indicated and Mr. Wuensch then caused to be incorporated for his laboratory efforts the defendant, Minerals Beneficiation; that instantly the plaintiff and others became employees of the new corporation with definite and fixed salaries; that the efforts to devise a more satisfactory process and apparatus for separating the lighter and valueless fragments from the heavier and more valuable mining materials continued; that a liquid chemical mixture, to bear and float the lighter and worthless material with the heavier material sinking to the bottom, was a well known medium in the process; that the removal of the lighter material to the top without a substantial loss of the liquid medium was not a problem, but that it was a problem, however, to lift the heavier and mineral laden fragments from the bottom for further processing without diminishing the important liquid medium. The evidence yields the inference that the process and apparatus were complete at the time but unsatisfactory as to lead and zinc ores. The then-recognized process for removing the heavier material was, as described in the patent, "any suitable means, as a bucket elevator * * * to elevate the heavier material." The bucket, however, carried with it some of the separating liquid medium. The evidence further shows that at first the plaintiff was a draftsman, but, becoming familiar with the process and apparatus, con-

ceived an idea to improve it. Mr. Wuensch had conceived the idea of a scraper wheel at the bottom of the cone shaped receptacle to propel the heavier material to the surface. This was efficient for coal but did not work in lead and zinc ores, because, in the absence of a protective housing, the scraping wheel became fouled and a continuous operation could not be maintained. At this juncture the plaintiff suggested an air-lift as adaptable to achieve the desired result. Though reluctant at first, his associates, including Mr. Wuensch, accepted the suggestion and began experimentations which proved the suggestion practicable.

Approximately concurrently with this suggested improvement plaintiff entered into the contract sued on. As a predicate for the agreement there was a recital that:

"* * * Minerals Beneficiation Incorporated is engaged in the development, improvement and introduction into public use of certain machines, devices, apparatus and processes relating to the handling, treating, concentrating and beneficiation of minerals or appertaining thereto, same being hereinafter referred to as the Wuensch process, * * *."

There was then the further predicate that:

"* * * I, the undersigned Charles B. Hebbard have heretofore been and now am employed by the said Minerals Beneficiation Incorporated, and in such employment have been and will necessarily be in a position to learn of said inventions, and will be *employed* in devising and developing improvements upon said machines, devices, apparatus and processes, and in inventing and discovering other machines, devices, apparatus and processes, * * *."

There followed the significant statement that:

"* * * the said Minerals Beneficiation Incorporated is desirous of obtaining and securing to itself the exclusive right and interest in and to any and all discoveries, inventions and improvements heretofore, or which may hereafter be, made or discovered or devised by me *while in the employment of said Minerals Beneficiation Incorporated, * * *."

And, then:

"Whereas, I am desirous of continuing in the employment of said Minerals Beneficiation Incorporated,

"Now, therefore, in consideration of the continuation of my employment by the said Minerals Beneficiation Incorporated, and the further sum of One Dollar ($1.00) to me in hand paid, the receipt of which is hereby acknowledged, *and other valuable considerations,* I, the said Charles B. Hebbard have covenanted and agreed to sell, assign and transfer unto the said Minerals Beneficiation Incorporated, its successors and assigns, all my right, title and interest in and to any and all inventions, discoveries, machines, devices, apparatus, processes and improvements to any thereof, which I have made, discovered or invented, or which I may hereafter make, discover or invent *while in the employ of said Minerals Beneficiation Incorporated, relating to the business of said company."*

Plaintiff continued as an employee of the said co-defendant until an exhaustion of its funds, about the end of the year 1933. At the instance of officers of the said co-defendant plaintiff was employed elsewhere from time to time, mainly, if not wholly, in supervising the installation of a process and apparatus conformable to the apparatus and process covered by the above mentioned patent. The process and apparatus having proved acceptable and efficient, an application for a patent was filed in 1936 and three years later a patent was granted. In the application for the patent the plaintiff and two others who were associates at the time the improvement was conceived or invented joined in the application as joint inventors.

Conformable to the agreement, the applicants assigned the invention to the defendant Minerals Beneficiation, Incorporated. As an employee of the named defendant it was plaintiff's primary duty to prepare drawings and sketches of the apparatus and the process. The plaintiff did this. These were witnessed for patent protective purposes April 27, 1932, and the operation of a model noted on May 6, 1932. An improved sketch or draft was made as of May 3, 1932. The plaintiff was uncertain as to

the dates when the suggested improvement was made but believed it to be prior to the contract upon which he bases his suit.

Plaintiff testified that when he signed the contract he asked for an interpretation of the words "and other valuable considerations" and that it was understood he was to be compensated if and when his invention proved profitable. At later dates he said he asked about compensation and was given assurances in harmony with the original interpretation of the contract by representatives of the defendants.

The evidence on behalf of the defendants was contradictory to that of the plaintiff. Moreover, as indicated by the separate answers of the defendants it was stoutly denied that plaintiff had conceived and invented the process and apparatus and it was averred and is now urged that the contract sued on was fully executed by both parties long before the filing of this suit.

Other facts, if and when they become pertinent, will be stated in the course of this memorandum opinion.

1. The plaintiff concededly was an employee of the defendant Minerals Beneficiation, Incorporated. Such employment required him to render service to his employer conformable to its objectives. As stated in his contract, the plaintiff was employed in "devising and developing improvements upon" the Wuensch process.

■ Under the authorities the defendant, as an employer, became entitled to the fruits of plaintiff's efforts. However, this fundamental legal right was augmented by an express agreement that the named defendant would become entitled to the employee's inventions and discoveries during the term of his employment. 39 C.J. § 167, p. 128; Fullman v. Steel City Electric Co., 3 Cir., 2 F.2d 4.

■■ Certainly the nature and circumstance of plaintiff's employment in this case raised an implication of an agreement that his inventions or discoveries would belong to his employer, wholly aside from the express agreement, and it was not contrary to public policy for the employer to take title to the inventions of its employees. 39 C.J. § 168, p. 130; Wright v. Vocalion Organ Co., 1 Cir., 148 F. 209.

■ By all of the authorities it is uniformly held that an employer has an equitable title to all inventions of an employee where the contract so provides. And this is particularly true where the employee is hired to do experimental work. See Standard Parts Co. v. Peck, 264 U.S. 52, loc. cit. 59, 44 S.Ct. 239, 241, 68 L.Ed. 560, 32 A.L.R. 1033, where the court said:

"By the contract Peck engaged to 'devote his time to the development of a process and machinery,' and was to receive therefor a stated compensation."

■ 2. The foregoing discussion is postulated upon the theory that the plaintiff did, in truth and in fact, conceive and invent the process. The evidence did not support this contention. Mr. Wuensch had already conceived the process in his laboratory when plaintiff began to work for him. It was efficient in coal mining. It then was probably divulged to the plaintiff for the first time what the process was, and, of course, the fluid chemical mixture as a floating element was well known, the screening of the dross from the surface was a familiar part of the process, the sinking of the heavier fragments to the bottom, the use of an inverted cone, and the lifting of the material from the bottom completed the process of separating fragmentary materials. Mr. Wuensch wanted an improvement on the process of lifting heavier material from the bottom. On that question the plaintiff contributed a valuable idea. An inspection of the patent reveals this description of the lifting means for the heavier material:

"Any suitable means, as a bucket elevator, may be employed to elevate the heavier material (and with it some of the separating medium) through this pipe, but preferably a jet of air under pressure is directed into the bottom of the pipe, and acts after the manner of an air-lift to effect this result."

In fact, the use of the air-lift was only one of the devices in the process and apparatus and in the multitudinous claims it was only mentioned once, in claim numbered 19. Plaintiff's contribution was in fact but a mechanical equivalent of the bucket elevator and scraping wheel but undoubtedly more efficient. The plaintiff did not con-

ceive or invent the apparatus or the process. He suggested and had introduced a device which was a mechanical equivalent of one of the elements or means, and which proved more efficient. Certainly the plaintiff should not be permitted to step into a laboratory where he was employed to aid in devising an improvement to a known process and then claim to be the discoverer of that process.

■ 3. In the trial of the case, as well as at the argument, it was the uniform attitude of counsel for the defendant that the words "and other valuable considerations" were not susceptible of interpretation and expansion by parol evidence. The contract was complete. The consideration was definite, clear and unambiguous, as follows:

"* * * in consideration of the continuation of my employment by the said Minerals Beneficiation Incorporated, and the further sum of One Dollar ($1.00) to me in hand paid, the receipt of which is hereby acknowledged, * * *."

This consideration was contractual, and, being such, is not subject to alteration by parol evidence.

■ As said by the late lamented and greatly revered Dean Wigmore in his estimable work on the Law of Evidence:

"* * * the statement of a consideration may * * * be itself an operative part of a contractual act,—as when in the same writing the parties set out their mutual promises as considerations for each other; here the word 'consideration' signifies a term of the contract, and hence the writing alone can be examined: In general, then, it may be said that a recital of consideration received is, like other admissions, disputable so far as concerns the thing actually received; but that, so far as the terms of a contractual act are involved, the writing must control, whether it uses the term 'consideration' or not." Wigmore on Evidence, 2d Ed., Section 2433, Book 5.

■ 4. Moreover, in the construction of contracts, this one is subject to the hoary and aged rule of ejusdem generis. Having enumerated a good and sufficient and an adequate consideration, the general words "and other valuable considerations" should be (as is usual in the construction of con-

tracts) treated as surplusage. The defendants were right in objecting to parol evidence in relation to these words of the contract.

■ 5. Even conceding that the general words "and other valuable considerations" might properly be explained and expanded by parole, yet fair preponderance of the testimony favored the defendants. Mr. Rakowsky and Mr. Young both testified in direct opposition to the testimony of plaintiff and all the facts and circumstances, including correspondence, corroborated them. The evidence for the defendants appeared to be the more reasonable, more satisfactory and more convincing to the mind.

In view of the above, the plaintiff is not entitled to recover and judgment should be entered for the defendants.