[Civ. No. 7222.   Fourth Dist.   Mar. 25, 1964.]

GRANT JENKINS, Plaintiff and Appellant, v. VALLEY OIL COMPANY, Defendant and Respondent.

Smith, Prante & Biggins and Stafford W. Prante for Plaintiff and Appellant.

Karpinski & Silverberg and Charles Elwyn Karpinski for Defendant and Respondent.

FINLEY, J. pro tem.*—Plaintiff-appellant is the operator of a service station which he subleased from W. R. and Mrs. L. Rundell. Defendant-respondent is a distributor of gasoline. In June of 1958, respondent entered into a contract with the Rundells for the delivery of gasoline to them or their lessee (appellant) at "our net buying price for gasoline purchased from the Hancock Oil Company ... plus one and one-half (1½) cents per gallon...."

The controversy centers about a temperature adjustment given to respondent by Hancock. Gasoline expands as its temperature rises. An adjustment for this increase in volume was made by Hancock in its sale of gasoline to the respondent, but not by respondent in its delivery to appellant. For instance, on one occasion respondent received in its truck 9,150 gallons of gasoline from Hancock. In its billing Hancock computed from a conversion table the number of gallons which would be in the truck if the temperature of the fuel were reduced to 60 degrees Fahrenheit. As a result respondent was billed not for 9,150 gallons but instead for 9,046 gallons. Respondent delivered the truck load to appellant and billed him for 9,150 gallons, no temperature adjustment being made. At the trial the parties stipulated that if appellant had paid for the number of gallons for which respondent was billed by Hancock from 1958 to 1961 rather than for the number of gallons delivered by respondent to appellant, that

---

*Retired superior court judge sitting pro tempore under assignment by the Chairman of the Judicial Council.

is, without the temperature adjustment, that appellant would have paid respondent $4,012.47 less.

Appellant contends that the contract is not ambiguous and that consequently it should be construed according to the plain meaning of the terms used. It is urged that ''the words 'net buying price' can only mean what the buyer paid for what he purchased less any discounts, rebates or other direct expenses directly related to and connected with the purchase''; that in the present case there was no ambiguity which would permit the court to give these words any other meaning; that, in effect, the temperature adjustment resulted in a rebate which reduced respondent's ''net buying price'' and that this reduction should have been passed along to appellant.

Appellant also complains that the court erred in admitting and considering evidence regarding a custom in the industry of negotiating temperature adjustments if they are desired by customers. It is urged that evidence was uncontradicted that he had no knowledge of such a custom and that respondent's representatives knew of appellant's ignorance in the matter and that even if such evidence could have been properly admitted it could not vary the plain meaning of the contract or alter its terms. Appellant also insists that since respondent drafted the contract it should be most strongly construed against respondent.

Respondent answers appellant's contentions saying that the term ''net buying price'' does not, as a matter of law, include a temperature adjustment, and that an expert called by appellant testified that in the industry only a dealer who bargains for temperature adjustment receives it. The contention is also made that if there is any error in the court's consideration of parol evidence as to custom and usages in the trade it was invited by appellant's eliciting evidence as to whether temperature adjustment was a matter to be negotiated. Further that appellant did not object to the evidence at the time of trial; that a party cannot be heard to complain of invited error and where there are conflicts in the evidence the trial court's finding will not be disturbed.

Finally, respondent notes it is well settled that a court will not write a contract different from that the parties entered into; that here the evidence was that the parties did not enter into a contract calling for a temperature adjustment; that there was evidence to support the trial court's finding and that the court did not err in construing the contract.

Respondent states in its brief that "Appellant's only real point on appeal is the construction of the contract, yet he points to no error of the trial court." In appellant's brief, however, under the heading "Contentions," appears this specification: "1. That the contract is plain and unambiguous in its meaning. That 'net buying price' could only mean the amount the distributor actually paid for the gasoline delivered and that, as a matter of law, the Court erred in giving any other construction to the contract."

It is apparent therefore that appellant does point to and claim as error the court's "construction of the contract," which respondent admits is appellant's "only real point on appeal."

This court agrees with respondent that the "construction of the contract" is actually the "only real point on appeal." Appellant offered parol and opinion evidence at the invitation of the trial court and without objection thereto being made by respondent. Therefore, appellant cannot in justice be charged with inviting error in producing this testimony.

An appellate court in the field of interpretation of written agreements or documents is not bound by the trial court's interpretation based solely on the language appearing in the document.

In *Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 381 [267 P.2d 257], the rule is stated as follows: "The sole evidence being the written documents without qualifying testimony, their legal effect is a question of law, and the interpretation given to them by the trial court is not binding upon appeal. In the absence of extrinsic evidence, 'there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.' (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *Moore* v. *Wood*, 26 Cal.2d 621, 629-630 [160 P.2d 772]; *Western Coal & Min. Co.* v. *Jones*, 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685]; *Estate of Fleming*, 31 Cal.2d 514, 523 [190 P.2d 611].)" See also *Livingston Rock & Gravel Co.* v. *De Salvo*, 136 Cal.App.2d 156, 159 [288 P.2d 317]; *Estate of Moody*, 118 Cal.App.2d 300, 305 [257 P.2d 709]; *Estate of O'Brien*, 74 Cal.App.2d 405, 407 [168 P.2d 432].)

The relevant provision in the written agreement between respondent and the Rundells under which gasoline was delivered by respondent to appellant reads as follows:

"As distributors for Hancock gasoline in San Diego County,

we agree to sell to you or to your sublessee or operator, Hancock gasolines, delivered to your station located at Tageside Road and Palm Avenue, La Mesa, subject to the following conditions:

"
. . . . . . . . . . . .

"2. We agree that *our net buying price for gasoline purchased* from the Hancock Oil Company, shall at all times be your *net buying price*; plus one and one half (1½) cents per gallon for *profit and delivery cost.* We also agree that our net buying price may be verified by you at any time with the Hancock Oil Company. . . ." (Italics added.)

In California the rule is that "The terms of a writing are presumed to have been used in their primary and general acceptation. ..." (Code Civ. Proc., § 1861.) ██ If no ambiguity or uncertainty is manifest in the language of a contract, where the words used are common ones, plain in their definition, import and connotation and free from enlargement or restriction to be implied from their use in any specialty field, the contract must be construed without reference to explanatory parol evidence.

In *Pinsky* v. *Sloat,* 130 Cal.App.2d 579, 589 [279 P.2d 584], the rule is stated as follows: "The parol evidence rule is not a rule of evidence but is one of substantive law. As applied to contracts, the rule is that as a matter of substantive law the act of embodying the complete terms of an agreement in writing becomes the contract of the parties. As a matter of law, the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule is operative when there is a single and final memorial of the understanding of the parties. [Citing cases.] Parol evidence, though admitted without objection, must be ignored as of no legal import, and its incompetency to vary a written contract is a matter of law. (*Lifton* v. *Harshman,* 80 Cal.App.2d 422, 432 [182 P.2d 222].) "

We have not been persuaded in this appeal that the words "net buying price" should be given any special or technical meaning not common to them in general every-day use, or that any parol evidence in the record is legally competent to alter this meaning.

Webster defines the word "net" in the sense of a skeletonizing adjective as "clear of, or free from, all charges, deductions, etc.; remaining after the deduction of all charges, outlay, loss, etc.; as net profit; net proceeds; net income." Other

definitive sources to which we have turned provide little, if any, further clarification. ■ It seems obvious that the phrase "net buying price" means simply the actual remuneration reduced to terms of monetary equivalent passing from buyer to seller for the whole of the thing or substance purchased unaffected by later expansion, contraction or change in weight or volume after the transfer of title or possession.

As an example, if respondent under this contract loaded any given amount of gasoline for delivery to appellant into an empty tank and paid Hancock for it, the entire tankful and all of it should have been delivered to appellant, for the exact amount paid by respondent to Hancock plus one and one half cents per gallon figured on the exact number of gallons for which respondent paid Hancock, even though in transit from Hancock the temperature rose and the volume increased. The implication from the language used seems clear. The same standard or basis for calculation was to be used for the purpose of purchase, hauling, delivery and profit. If respondent, as drawer of the contract, held any intent contrary to the plain implication of the terms used this departure should have been plainly spelled out in the instrument. ■ An instrument in writing is construed most strongly against the party who drafted it or caused it to be drafted. (Civ. Code § 1654; *Laux* v. *Freed*, 53 Cal.2d 512, 524 [2 Cal.Rptr. 265, 348 P.2d 873]; *Taylor* v. *J. B. Hill Co.*, 31 Cal.2d 373, 374 [189 P.2d 258].)

■ From the evidence it is quite clear that appellant was unaware of the differential brought about by the change in volume due to change in temperature while gasoline was in transit and accepted the language of the contract as dictating his cost according to a fixed standard. Respondent, on the contrary, being in the business of gasoline transportation was aware of the expansion phenomenon and it appears from the evidence knew that appellant was unaware of it. Thus there was actually no meeting of the minds on the point and respondent having drawn the contract or having had it drawn is not in position to demand that inflections in interpretation, even if warranted, be directed in its favor.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.