CONSTANT D. DU FRENE et al., Plaintiffs and Respondents, v. KAISER STEEL CORPORATION, Defendant and Respondent; KAISER ENGINEERS, Defendant and Appellant.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and James M. Radnich for Defendant and Appellant.

Long & Levit, David C. Bogert, Irving L. Halpern and Bert W. Levit for Plaintiffs and Respondents.

Thompson & Colegate, Arthur W. Kelly, Jr., and Don Brown for Defendant and Respondent.

FINLEY, J. pro tem.*—This appeal is by defendant Kaiser Engineers from a judgment in favor of plaintiffs Constant D. DuFrene and Erving L. Du Frene, individually and doing

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

business as Du Frene Brothers, a copartnership, against defendant Kaiser Engineers, a corporation, but in favor of Kaiser Steel Corporation. Hereinafter plaintiffs-respondents will be referred to as "Du Frene," defendant-respondent Kaiser Steel Corporation as "Kaiser Steel" and defendant-appellant as "Kaiser Engineers." Under consideration herein also is a motion to dismiss the appeal as to it made by defendant and respondent Kaiser Steel.

The action was brought by Du Frene against Kaiser Engineers and Kaiser Steel, which are two separate and distinct corporations, Kaiser Engineers being a division of Henry J. Kaiser Company. In it, plaintiffs seek to recover compensation in the sum of nearly $9,000 for damages to and loss of use of a certain 60-ton truck crane under an asserted oral contract of bailment to defendants Kaiser Steel and Kaiser Engineers.

The incident involved here occurred on November 6, 1957, at the Kaiser Steel plant in Fontana. Du Frene operated a crane rental business and owned the 60-ton crane involved. On May 9, 1957, Du Frene entered into a written contract with Kaiser Steel and Kaiser Engineers wherein Du Frene agreed to furnish them a 30-ton crane. On July 23, 1957, this contract was amended by a writing wherein Du Frene agreed to furnish an additional 35-ton crane. This writing will be referred to as "Change Order No. 1." By a similar writing dated November 15, 1957, and bearing the date November 4, 1957, as the date of approval by Du Frene, the contract was again amended. In this writing Du Frene agreed to furnish the 60-ton crane here involved. This writing will be referred to as "Change Order No. 2."

On November 3, 1957, the 60-ton crane was delivered by the manufacturer to Du Frene at the Kaiser Steel plant in Fontana, California. It was first used there on November 6, 1957. At that time Constant Du Frene, one of the brothers, and Roy Barber, a factory representative of the manufacturer, were with the crane and accompanied its movements from about 7 a.m. up to approximately 10 :30 a.m. when the boom collapsed during an attempted lift of a 55-ton steel beam.

The case was tried by the court sitting without a jury. Upon judgment for plaintiffs being rendered by the court against defendant Kaiser Engineers only, said defendant appealed from the judgment and named as a respondent Kaiser Steel. A motion to dismiss the appeal as to it was thereupon filed in this court by Kaiser Steel on the ground that: "Appellant is not a party aggrieved by the judgment of the court

in favor of the defendant and respondent, Kaiser Steel Corporation, a corporation within the meaning of California Code of Civil Procedure, section 938.''　█　The stated point of the motion is that: ''A defendant who is individually liable is not aggrieved by the exoneration of a co-defendant.'' In support of this point the following cases are cited by the moving party which are convincing in support of the motion: *Click* v. *Southern Pacific Co.*, 113 Cal.App. 528 [298 P. 839]; *Rankin* v. *Central Pacific R.R. Co.*, 73 Cal. 96 [15 P. 57]. (See also *Fran-Well Heater Co.* v. *Robinson*, 182 Cal.App.2d 125 [5 Cal.Rptr. 900], and *Guy F. Atkinson Co.* v. *Consani*, 223 Cal.App.2d 342 [35 Cal.Rptr. 750].)

The motion by Kaiser Steel to dismiss the appeal as to the judgment in its favor is therefore granted.

In support of its judgment in favor of plaintiffs and against defendant Kaiser Engineers, the court made the following findings:

''3. On or about November 4, 1957, Plaintiffs entered into an oral contract of bailment with Defendants Kaiser Engineers and Henry J. Kaiser Company, whereby said Sixty-Ton Lima crane was leased, rented and delivered to said Defendants at Fontana, California, for an indefinite period and for an agreed consideration; and on and subsequent to said date and at all times herein relevant, including November 6, 1957, said Defendants were bailees for hire of said crane and were in exclusive possession and control thereof.

''4. On or about November 6, 1957, at Fontana, California, the Defendants Kaiser Engineers and Henry J. Kaiser Company negligently controlled, supervised, directed and otherwise managed the operation of said crane, which said negligence of said Defendants constituted active and affirmative negligence; and said negligence constituted a breach by said Defendants of said contract of bailment in that said Defendants failed to use ordinary care for the preservation in safety and good condition of said crane and the parts thereof.

''　.　.　.　.　.　.　.　.　.　.　.　.　.　.　.

''7. Neither the Plaintiffs nor any of their agents or employees were guilty of any negligence in the operation or maintenance of said crane or in any other respect, regarding the buckling and collapse of the boom on said crane or the damages suffered by Plaintiffs as a result thereof on or about November 6, 1957.

''8. The document described as Change Order No. 2 to Rental Agreement No. F76-55111-8008, and dated November

15, 1957, which document was introduced into evidence as Defendants' Exhibit 'C,' was executed by the Plaintiffs subsequent to November 22, 1957, and was not intended by the parties thereto to affect any of the rights or obligations which accrued to such parties as a result of the damages occurring to Plaintiffs' said crane on or about November 6, 1957.

"9. The document described as Rental Agreement No. F76-55111-8008, dated May 9, 1957, and introduced into evidence as Defendants' Exhibit 'A,' did not apply to the Plaintiffs' said crane or the loss thereto on or about May 6, 1957; and in any event neither the provision thereof entitled 'Mechanical Warranty, Maintenance and Damage' nor the provision thereof entitled 'Indemnity' was intended by the parties to said agreement to apply to relieve Defendants Kaiser Engineers or Henry J. Kaiser Company from liability for its own active or affirmative negligence that was a proximate cause of the damage to Plaintiffs' said property, and therefore neither of said provisions applied to the Plaintiffs' said loss that occurred on or about November 6, 1957."

Appellant urges the following points for reversal:

"I. The trial court erred in finding an oral contract.

"II. The trial court erred in finding a bailment.

"III. The plaintiffs did not sustain their burden of proof.

"IV. The trial court erred in not finding the plaintiffs negligent.

"V. The trial court erred in not finding that the defendants were released from liability."

The complaint herein alleged an oral contract of bailment of the 60-ton crane to defendants. Defendants in their answers denied the allegation of oral bailment, attached copies of the original written contract and the two written change orders as exhibits and plead them as an affirmative defense. Plaintiffs-respondents failed to deny the genuineness and due execution of these instruments under the provisions of Code of Civil Procedure, section 448, and in their brief state: "Plaintiffs do not deny the genuineness and due execution of said agreement." Their position is, however, that: "Thus whether or not the written Agreement applied to the loss in question was for the trial court to determine and such a determination was not precluded by plaintiffs' implied admission of genuineness and due execution under Code of Civil Procedure, section 448."

The pleadings and admission just outlined places squarely before us the initial question of whether the trial court was

legally justified in finding an oral bailment in the light of an admitted written agreement between the parties which specifically alludes to and purports to cover the 60-ton crane rental.

The findings of the trial court relative to the conduct of the parties surrounding the execution of the writings are not subject to question here if those findings are supported by any competent evidence. On this point the decisions are legion and require no specific citation of authority. However, where the genuineness and due execution of a writing are admitted by the parties and its status as a valid agreement is not under attack, the interpretation of the writing then becomes a matter of law in which an appellate court is not bound by the interpretation of the trial court. (*Jenkins* v. *Valley Oil Co.*, 226 Cal.App.2d 41 [37 Cal.Rptr. 714] ; *Meyer* v. *State Board of Equalization*, 42 Cal.2d 376 [267 P.2d 257] ; *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825] ; *Moore* v. *Wood*, 26 Cal.2d 621 [160 P.2d 772] ; *Western Coal & Min. Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685] ; *Estate of Fleming*, 31 Cal.2d 514 [190 P.2d 611].)

Furthermore, if the discussions and negotiations between the parties have been reduced to integrated writing, parol evidence or extrinsic evidence, either oral or written, is, with certain exceptions not involved here, inadmissible to vary or add to the terms thereof or to alter the character of liability created by it. (*Ruiz* v. *Norton*, 4 Cal. 355 [60 Am. Dec. 618].) Civil Code, section 1625, provides: ''The execution of a contract in writing, whether the law requires it to be written or not, supersedes all negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.''

Civil Code, section 1647, provides: ''A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.''

This means that the circumstances which surrounded and led to its execution may be considered to ascertain its true meaning, but these circumstances cannot be considered for the purpose of creating undertakings contrary to the specific terms of the writing. (*Gray* v. *Commodity Credit Corp.* (D.C.S.D. Cal 1945) 63 F. Supp. 386.) Evidence concerning prior negotiations is valid to resolve uncertainty in the language of a contract, but not to raise doubt as to the meaning of the clear terms. (*Hercules Glue Co.* v. *Littooy*, 25 Cal.App.2d 182 [76 P.2d 700].) Respondents Du Frene urge in their brief that, ''Whether or not the Order

(Change Order No. 2) had the retroactive effect claimed is a question of the intent of the parties to the Order." and "Inasmuch as Kaiser pleaded the Order as an affirmative defense in avoidance of plaintiffs' claims, it had the burden of proving the applicability of the Order and therefore had the burden of proving the necessary intent of the parties thereto." They cite Code of Civil Procedure, section 1981, and *Gularte* v. *Martins* (1944) 65 Cal.App.2d 817 [151 P.2d 570].

Both the code section and the case cited stand for the proposition that the party holding the affirmative of an issue must produce the evidence to prove it or suffer defeat on that issue if no evidence be given on either side. But neither the code section nor the case stand for the proposition that the clear meaning of an agreement consisting of integrated writings must be proven by the party relying upon it other than by producing the writings themselves. This appellant did. It then became a matter of interpretation without reference to extrinsic evidence where there is no ambiguity and where the validity of the writings is not attacked. ■ Respondents say that: "Kaiser did not offer any evidence as to the intent of the parties regarding a retroactive effect of the order." But Change Order No. 2 contains the following specific and unambiguous language: "The foregoing Order for Change No. 2 is hereby approved and accepted as of November 4, 1957." The signatures of all respondents appear immediately below this language. Obviously it was not incumbent upon appellant to produce evidence to explain this language or the intent it expresses. The language could hardly be more specific or the meaning more clear.

Respondents take the position that different rules of evidence and construction of language should apply: "In view of the fact that it (Change Order No. 2) was executed more than two weeks after the loss without any reference to the loss, the only reasonable and logical inference that can be drawn as to any intent on the part of plaintiffs is that they did not intend any results that would adversely affect the rights they had against Kaiser arising from such loss, and having a value of approximately $9,000.00." ■ But, as was done here, a party of a contract may retroactively adopt prior acts or fix retroactive dates of execution for a contract. (*Baker* v. *City of Palo Alto*, 190 Cal.App.2d 744 [12 Cal.Rptr. 425]; *Steiner Lumber Co.* v. *Sapp*, 216 Cal.App.2d 800 [31 Cal.Rptr. 276, 32 Cal.Rptr. 395]; *Rosendahl Corp.* v. *H. K. Ferguson Co.*, 211 Cal.App.2d 313 [27 Cal.Rptr. 56].)

Respondents are saying in effect that the meaning of specific language in a contract should be interpreted not according to the clear meaning of the words used but by resort to rationalization based upon extrinsic evidence as to whether under the circumstances it was wise or prudent for the signators to have signed the instrument. They have cited no authority for the proposition that a contract can be avoided on the ground of imprudence alone without any claim or showing of mistake, inadvertence, deceit or fraud.

█ In our analysis of the integrated writings forming the written contract between the parties, we find no ambiguity in the provisions delineating the obligations of the respective parties in connection with any of the rented equipment. The rental agreement provides in part: ''The cost of any and all repairs, maintenance and replacements for the equipment and any loss or *damage* thereto arising from *any cause whatsoever* shall be borne by Lessor, except as may be required under 'SPECIAL PROVISIONS' herein.'' [Italics ours.]

Then follows the title, ''SPECIAL PROVISIONS: None.''

In Change Order No. 2 appears this provision: ''Except as herein expressly modified, said Rental Agreement and all the terms and conditions thereof shall remain unaltered and in full force and effect. The foregoing Order for Change No. 2 is hereby approved and accepted as of November 4, 1957.''

This change order is dated November 15, 1957, and apparently was prepared, or at least presented to respondents Du Frene for signature, on or about November 22, 1957. This was some ten days after the crane had been repaired and placed back in operation. Any change of relationship, rights, or responsibility as between the parties and related to the written contract to be binding must have been made a part thereof.

By the terms of the written agreement, ''The cost of any and all repairs, maintenance and replacements for the equipment and any loss or damage thereto arising from any cause whatsoever shall be borne by Lessor [respondents Du Frene] . . . .'' Since the judgment rendered by the trial court was to the contrary, the judgment is reversed. Motion of respondent Kaiser Steel Corporation to dismiss appeal as to it granted.

Griffin, P. J., Coughlin, J., concurred.

A petition for a rehearing was denied January 18, 1965, and the petition of the plaintiffs and respondents for a hearing by the Supreme Court was denied February 17, 1965.