**Silas W. BYERLY, Appellant,**

v.

**ALVEY, INC., Respondent.**

**No. 41988.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 19, 1980.

Lawrence O. Willbrand, St. Louis, for appellant.

Andrew Rothschild, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for respondent.

REINHARD, Judge.

Plaintiff appeals from a summary judgment entered in favor of defendant by the trial court under Rule 74.04.

Plaintiff's case against defendant was for the alleged conversion of plaintiff's property. "On appeal, plaintiff submits that the trial court erred in rendering summary judgment in that there remained a genuine issue of material fact.

In his petition, plaintiff alleged: [O]n or about the 18th day of April, 1977, the plaintiff was employed by the defendant and said defendant seized, took from the plaintiff and converted to its own use a test fixture for control units which was constructed and owned by the plaintiff to plaintiff's damage in the sum of Five Hundred ($500.00) Dollars which was the reasonable market value of said fixture." He further alleged that defendant's conduct was willful, intentional and malicious and he sought to recover punitive damages in the sum of $100,000.

In defendant's answer, it admitted that plaintiff was an employee of defendant, but denied it converted plaintiff's property. Defendant further alleged "that plaintiff entered into an Employment Assignment

Agreement, dated April 8, 1969, in which, in consideration of plaintiff's present and continuing employment, plaintiff agreed to disclose and assign to defendant all ideas, inventions, or other devices constructed by plaintiff while in the defendant's employ, including the test fixture for control units described in Count I of the Petition." The agreement referred to is reproduced below:

In consideration of my employment, or, if now employed, the continuation of my employment by Alvey Conveyor Manufacturing Co., or any subsidiary of Alvey Conveyor Manufacturing Co. (such employer being hereafter referred to as 'Alvey') and the salary or wages to be paid or being paid to me, I do hereby agree as follows:

1. I agree that I will promptly and fully disclose to Alvey any and all ideas, methods, devices, betterments, improvements, whether patentable or unpatentable, acquired or developed by me alone, or jointly with others, but applicable to the business of Alvey and to any of its present line of products or which may be applicable to products normally within the realm of the expansion and enlargement of the Alvey business.

2. The obligation to disclose as recited in paragraph 1 will continue during my employment and for one year after termination thereof, and the obligation will apply regardless of any change of salary or nature of employment which shall be extended and accepted by me.

3. I agree that at all times hereafter, whether or not my employment shall have been terminated, I will sign all papers, take all rightful oaths, and perform all acts necessary to assign to Alvey my entire right, title and interest in and to the disclosures included in the scope of paragraph 1 above so as to permit Alvey to apply for and obtain patents of the United States and foreign countries, if it so decides.

4. The foregoing obligations will be binding on my heirs and legal representatives and shall inure to the benefit of Alvey's successors and assigns.

In plaintiff's reply, he admitted he signed the Employee Assignment Agreement. Defendant moved for summary judgment relying upon the pleadings, plaintiff's deposition, and the agreement. Plaintiff made no response to defendant's motion. The motion was sustained.

The standards which govern our review of summary judgments were stated in *Cooper v. Yellow Freight System, Inc.,* 589 S.W.2d 643 (Mo.App.1979):

We must examine the record in the light most favorable to the party against whom the judgment was rendered and give to the party the benefit of every doubt. A summary judgment is appropriate only where the pleadings, depositions, admissions on file, together with any affidavits reveal that there is no genuine issue of material fact. A genuine issue of fact preventing summary judgment exists whenever there is the slightest doubt as to the facts. It is incumbent upon the party moving for summary judgment . . . to demonstrate by unassailable proof that there is no genuine issue of fact.

*Id.* at 645. (citations omitted).

The record reveals that plaintiff became an employee of the defendant in the 1950s. He began as an electronic technician and worked his way up to become foreman of the electrical department. As part of his employment at Alvey, Inc., plaintiff had previously supervised the design and construction of several test fixtures similar to the one involved in this case for Alvey's internal use.

Plaintiff's son, who had previously been employed by defendant for approximately 17 years and who was very familiar with the test fixtures previously made, went to work at the Miller Brewing Company, a customer of defendant, in January 1977. Shortly thereafter, he requested that plaintiff design and construct the test fixture in question for the price of $500.00.

Plaintiff constructed the test fixture at defendant's plant but used his own components. He was not acting on behalf of the defendant but intended to make a personal

profit. Defendant learned of these dealings and dismissed plaintiff because of them.

With the record in this posture, we believe that the court properly determined as a matter of law that the defendant has such an interest in the test fixture as to defeat plaintiff's claim of conversion. "Conversion is an unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's right." *Wirth v. Heavey*, 508 S.W.2d 263, 267 (Mo.App.1974). We look to the contract between the parties to determine their interest in the test fixture and ultimately whether the plaintiff could recover from defendant in an action for conversion. "The cardinal rule for the construction of contracts is to ascertain the intention of the parties, from a consideration of the four corners of the instrument, if that is possible, and to give effect to that intention." *Republic Engineering & Mfg. Co. v. Moskowitz*, 376 S.W.2d 649, 656 (Mo. App.1967) *cert. denied* 379 U.S. 837, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964).

Under the agreement here, plaintiff is bound to disclose any "ideas, methods, devices, betterments, improvements" developed by him that are applicable to defendant's business. There is no question that the test fixture involved here comes within the scope of this language.

Plaintiff is also bound by the agreement to assign to defendant his "entire right, title and interest in the disclosures included in the scope of paragraph 1." "Disclosure" means not only the act of disclosing, but also the thing that is disclosed.[1] *Webster's Third New International Dictionary*, 1964. It is apparent, given the explicit reference to paragraph 1, that "disclosures" refers back to the objects of the verb "disclose" in that paragraph, which are "ideas, methods, devices, betterments, improvements." The word "disclosures" serves as a shorthand reference to this list. Therefore, plaintiff is bound to assign his "entire right, title and interest" to the test fixture.

This conclusion is entirely consistent with the purpose of the agreement, which is to allow the defendant to retain the benefits of any new inventions improving its business which are developed by its employees. The defendant had, by virtue of this agreement, an interest in the test fixture which amounted at least to equitable title, *see Hebbard v. American Zinc, Lead & Smelting Co.*, 66 F.Supp. 113, 116 (W.D.Mo.1946) *aff'd* 161 F.2d 337 (8th Cir. 1947), and assignment of legal title can be compelled. *Paley v. Du Pont Rayon Co.*, 71 F.2d 856, 858 (7th Cir. 1934). Hence, plaintiff's action for conversion against defendant will not lie and summary judgment was properly entered.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

---

1. The word "disclosure" also has a meaning in the context of patent law, being the equivalent of the specification in a patent application. *Westinghouse E. & Mfg. Co. v. Metropolitan E. Mfg. Co.*, 290 F.661, 664 (2d Cir. 1923). Neither party makes mention of this. We conclude that this meaning has no application here because "the disclosures included in the scope of paragraph 1" are disclosures made by the employee to the employer and do not concern a patent application. Also we find no legal significance in such a severance of a patent application and the assignment of rights in a portion of it.