Filed 5/3/13  Long v. OneWest Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL LONG et al., | |
| Plaintiffs and Appellants, | G046402 |
| v. | (Super. Ct. No. 30-2010-00362172) |
| ONEWEST BANK, FSB, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Michael Long and Kellie Long, in pro. per.; Brookstone Law, Vito Torchia, Jr., Deron Colby and Sasan Behnood for Plaintiffs and Appellants.

Allen Matkins Leck Gamble Mallory & Natsis, Charles D. Jarrell, Andrew E. Miller and Joshua R. Mandell for Defendants and Respondents.

\*          \*          \*

Plaintiffs and appellants Michael and Kellie Long (collectively, the Longs) filed this action to set aside defendants and respondents' nonjudicial foreclosure on their home.[1]  The Longs allege the foreclosure proceedings are void because the beneficiary under their deed of trust never properly appointed the trustee that conducted the foreclosure sale.  The trial court granted Defendants summary judgment, finding the Longs failed to establish a triable issue on the trustee's authority to initiate the foreclosure proceedings.  We agree and affirm the judgment in Defendants' favor.

I

FACTS AND PROCEDURAL HISTORY

In September 2005, the Longs purchased a home in Costa Mesa, California.  They borrowed $650,000 from Paul Financial, LLC, to pay a portion of the purchase price and signed a promissory note and deed of trust as security for the loan.  The deed of trust designated Paul Financial as the lender, Foundation Conveyancing, LLC, as the trustee, and MERS as the beneficiary and nominee for Paul Financial and its successors and assigns.[2]  The deed of trust irrevocably granted and conveyed to the trustee the power

---

[1]    Defendants and respondents are OneWest Bank, FSB (OneWest), Mortgage Electronic Registration Systems, Inc. (MERS), Deutsche Bank National Trust Company (Deutsche Bank), Roger Stotts, and Vicki Brizendine.  We shall collectively refer to all defendants and respondents as Defendants.

[2]    "'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans.  Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS.  MERS is listed as the grantee in the official records maintained at county register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights to the mortgages.  The lenders can then sell these interests to investors without having to record the transaction in the public record.  MERS is compensated for its services through fees charged to participating MERS members.'  [Citation.]  'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.'  [Citation.]"  (*Gomes v. Countrywide Homes Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1151 (*Gomes*).)

to sell the Longs' property at a nonjudicial foreclosure sale if they defaulted on the loan. IndyMac Bank serviced the Longs' loan.[3]

In August 2006, Deutsche Bank received the Longs' original promissory note as the trustee and custodian under the Harborview Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates, Series 2006-8, a mortgage-backed investment trust. Deutsche Bank held the original promissory note throughout all times relevant to this action. After Deutsche Bank obtained the note, IndyMac continued to service the loan and MERS remained the beneficiary and the lender's nominee under the deed of trust.

When the Longs purchased the property in September 2005, the county tax assessor erroneously recorded the purchase price and assessed the property at a value significantly higher than it was worth. As a result, the Longs received a property tax bill they contend was approximately double what it should have been based on the actual purchase price. The Longs appealed the tax assessor's bill and did not pay any of their property taxes. Starting in August 2007, IndyMac repeatedly notified the Longs their loan was in default because they had not paid their taxes. By mid-2008, the Longs still had not paid any property taxes or resolved their appeal with the tax assessor. To protect its security interest in the property, IndyMac exercised the right under the note and deed of trust to pay the Longs' property taxes and add the amount paid to the loan balance. IndyMac then amortized the taxes over one year and increased the Longs' monthly mortgage payment from approximately $2,800 to approximately $9,500 to recoup the taxes and establish an escrow account for future taxes. Beginning in June 2008, the Longs stopped making their mortgage payments.[4]

---

[3] During the time IndyMac Bank serviced the Longs' loan, the Federal Deposit Insurance Corporation (FDIC) seized control of IndyMac Bank and changed its name to IndyMac Federal Bank, FSB. We will refer to both IndyMac Bank and IndyMac Federal Bank, FSB as IndyMac.

[4] After IndyMac added the amount it paid for the taxes to the Longs' monthly mortgage payment, the Longs contend they sought a loan modification. They

After an assignment of the Longs' note and deed of trust and a substitution of trustee, Quality Loan Service Corporation (Quality Loan) foreclosed on the property on IndyMac's behalf.  Because the Longs base their principal challenge to the foreclosure sale on the timing of the assignment, substitution of trustee, and the various steps in the nonjudicial foreclosure process, we provide the following chronology relating to the execution, notarization, and recording of the critical documents:

November 6, 2008        The "Effective Date" identified in the "Assignment of Deed of Trust" MERS executed as the lender's nominee to assign to IndyMac "all beneficial interest under [the Longs' deed of trust] together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust."  As explained below, this document was not

_____

allege an IndyMac representative told them they stood a better chance of obtaining a modification if their loan was delinquent.  The Longs, however, do not allege this statement caused or induced them to default on their loan nor do they claim this conduct gave rise to a cause of action against Defendants.  Accordingly, we do not address this contention.

We note that on July 11, 2012, the Governor approved legislation known as the "California Homeowner Bill of Rights" (Sen. Bill No. 900 (2011-2012 Reg. Sess.); Assem. Bill No. 278 (2011-2012 Reg. Sess.).  (Governor Brown's signing message on Assem. Bill No. 278 (2011-2012 Reg. Sess.) July 11, 2012.)  The California Homeowner Bill of Rights prohibits, among other things, "dual track" foreclosures, which occur when a servicer continues foreclosure proceedings while reviewing a homeowner's application for a loan modification; requires a single point of contact for homeowners who are negotiating a loan modification; and expands notice requirements to the borrower before the lender may take action on a loan modification or pursue foreclosure.  (Governor Brown's signing message; see Stats. 2012, ch. 86; Stats. 2012, ch. 87.)  Because the California Homeowner Bill of Rights became effective on January 1, 2013 (Cal. Const., art. IV, § 8, subd. (c)(1) [effective date of new statutes is Jan. 1, following 90 days after enactment]), after Defendants foreclosed on the Longs' property, we do not address its application to this case.

4

| | |
|---|---|
| | notarized until January 2009 and does not state when it was signed. |
| December 4, 2008 | IndyMac executes a "Substitution of Trustee" designating Quality Loan for Foundation Conveyancing as the trustee on the Longs' deed of trust. |
| December 4, 2008 | Quality Loan executes a "Notice of Default and Election to Sell under Deed of Trust" (Notice of Default) to commence the nonjudicial foreclosure process on the Longs' property. |
| December 10, 2008 | Quality Loan records the Notice of Default. |
| January 20, 2009 | A notary notarizes MERS's signature on the Assignment of Deed of Trust, but the Assignment does not identify the date on which MERS actually signed it. As explained above, the Assignment states its effective date was November 6, 2008. |
| January 22, 2009 | IndyMac records the Substitution of Trustee. |
| January 30, 2009 | IndyMac records the Assignment of Deed of Trust. |
| March 12, 2009 | Quality Loan records a "Notice of Trustee's Sale" for the Longs' property. |
| March 19, 2009 | OneWest purchases the loan servicing rights for the Longs' loan from the FDIC, acting as receiver for IndyMac. |
| July 22, 2009 | Quality Loan sells the Longs' property to OneWest at a nonjudicial foreclosure sale.[5] |
| July 29, 2009 | OneWest records a "Trustee's Deed Upon Sale" transferring the Longs' property to OneWest. |

---

[5] The Longs contend Quality Loan sold their home without giving them notice of the public auction date because the original date was continued multiple times. Because the Longs' complaint did not state a cause of action based on that contention, we do not address it.

5

Shortly after obtaining title to the property, OneWest filed an unlawful detainer action to evict the Longs and the trial court entered a judgment awarding OneWest possession in July 2010. While the unlawful detainer action was pending, the Longs filed this action to set aside the foreclosure sale and recover damages from Defendants and others for their role in the foreclosure. The Longs alleged Quality Loan lacked authority to act as trustee and therefore the entire foreclosure was void. Following a series of successful demurrers, the only claims remaining against Defendants were claims for wrongful foreclosure, unfair competition under Business and Professions Code section 17200, "tort in se," and quiet title.

Defendants moved for summary judgment, or alternatively summary adjudication, on these remaining causes of action. Defendants asserted they followed the required procedures for conducting a nonjudicial foreclosure on the property and any technical or procedural defects did not prejudice the Longs. The Longs opposed the motion, arguing Quality Loan lacked authority to foreclose on IndyMac's behalf because (1) IndyMac purported to substitute Quality Loan as trustee *before* MERS assigned any beneficial interest in the property to IndyMac; (2) the assignment from MERS to IndyMac was void because the signature on MERS's behalf was forged; and (3) IndyMac did not hold the Longs' promissory note when Quality Loan foreclosed on its behalf.

The trial court granted the motion and entered judgment in Defendants' favor. The Longs timely appealed and petitioned this court for a writ of supersedeas to prevent OneWest from executing on the unlawful detainer judgment. Pending further order of this court, we stayed enforcement of the unlawful detainer judgment on the condition the Longs continued to pay OneWest $2,500 per month.

6

II

DISCUSSION

A. *Summary Judgment Standard of Review*

Summary judgment is properly granted if there is no triable issue on any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847 (*Eriksson*).) A defendant moving for summary judgment bears the initial burden of presenting facts to negate an essential element of the plaintiff's cause of action or to show there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 168-169 (*Teselle*).) Although the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant seeking summary judgment must present evidence that would preclude a reasonable trier of fact from finding it was more likely the material fact was true. (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304.)

If the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing triable issues exist on one or more material facts. (Code Civ. Proc., § 437c, subd. (p)(2); *Teselle*, *supra*, 173 Cal.App.4th at pp. 168-169.) A triable issue of material fact exists "'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145 (*Dollinger*).)

We review de novo a trial court's ruling on a summary judgment motion. (*Eriksson*, *supra*, 191 Cal.App.4th at p. 848.) "'[I]n practical effect, we assume the role

7

of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment.' [Citation.] 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' [Citation.] . . . The sole question properly before us on review of the summary judgment is whether the judge reached the right *result* . . . whatever path he might have taken to get there, and we decide that question independently of the trial court. [Citation.]" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694, original italics, fn. omitted; *Dollinger*, *supra*, 199 Cal.App.4th at p. 1144 ["the reviewing court '. . . reviews the trial court's ruling, not its rationale'"].)

B.      *The Trial Court Properly Granted Summary Judgment on the Longs' Wrongful Foreclosure Claim*

1.      Governing Nonjudicial Foreclosure Principles

"Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. . . . [¶] The statutory scheme can be briefly summarized as follows. Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citations.] The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. [Citations.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citations.] After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. [Citations.] . . . The property must be sold at public auction to the highest bidder. [Citations.] [¶] During the foreclosure process, the debtor/trustor is given several opportunities to cure the default and avoid the loss of the property." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

8

"'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.]" (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 (*Debrunner*).)

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by *substantial evidence of prejudicial procedural irregularity*. [Citation.] . . . It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity. [Citation.]" (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258, italics added (*Melendrez*); see also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*) ["a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was *prejudicial to the plaintiff's interests*" (italics added)]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 (*Knapp*) ["A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by *pleading and proving an improper procedure and the resulting prejudice*'" (italics added)].) "Prejudice is not presumed from 'mere irregularities' in the process. [Citation.]" (*Fontenot*, at p. 272.)

2. The Longs Failed to Establish a Triable Issue of Fact Regarding Quality Loan's Authority to Initiate and Conduct the Foreclosure

On their summary judgment motion, Defendants met their initial burden to show the Longs' wrongful foreclosure claim lacked merit. Defendants showed they properly sold the Longs' property through a nonjudicial foreclosure sale by presenting evidence that (1) the Longs borrowed $650,000 to purchase the property and executed a

9

deed of trust as security for the loan; (2) the deed of trust granted the trustee power to sell the property through a nonjudicial foreclosure if the Longs defaulted on the loan; (3) the Longs defaulted on the loan; (4) MERS, as the beneficiary and nominee of the original lender and its successors and assigns, assigned all beneficial interest in the Longs' deed of trust and promissory note to IndyMac; (5) IndyMac substituted Quality Loan as the trustee under the Longs' deed of trust; (6) Quality Loan recorded the Notice of Default; (7) Quality Loan recorded the Notice of Trustee's Sale; (8) the Longs did not cure their default; and (9) Quality Loan sold the property at a public auction. This evidence shifted the burden to the Longs to establish a triable issue on their wrongful foreclosure claim.

The Longs contend they established a triable issue on whether the entire foreclosure process was void because Quality Loan lacked authority to initiate and conduct the nonjudicial foreclosure. The Longs offer three theories on why Quality Loan lacked authority, but they failed to establish a triable issue on any of their theories.

a. The Timing of the Substitution of Trustee and Assignment of Deed of Trust Did Not Deprive Quality Loan of Authority

The Longs first argue Quality Loan lacked authority to initiate and conduct the nonjudicial foreclosure because IndyMac had no beneficial interest in the Longs' deed of trust and promissory note when it purported to substitute Quality Loan as the trustee. The Longs emphasize IndyMac executed the Substitution of Trustee — and Quality Loan recorded the Notice of Default — over a month *before* MERS executed the Assignment of Deed of Trust granting IndyMac a beneficial interest in the deed of trust and note. Because IndyMac had no beneficial interest in the deed of trust and note when it executed the Substitution of Trustee, the Longs argue Quality Loan lacked authority to act as trustee when it recorded the Notice of Default and the foreclosure proceedings therefore are void. Neither the law nor the facts support this argument

10

First, although MERS apparently did not execute the Assignment of Deed of Trust until January 2009,[6] the Assignment has an effective date of November 6, 2008, which was approximately one month *before* IndyMac substituted Quality Loan as trustee and Quality Loan recorded the Notice of Default. "[A] party of a contract may . . . fix retroactive dates of execution for a contract." (*Du Frene v. Kaiser Steel Corp.* (1964) 231 Cal.App.2d 452, 458; see also *National Parks & Conservation Assn. v. County of Riverside* (1996) 42 Cal.App.4th 1505, 1522 [parties are "within their rights" to make their agreement effective on a date other than the date they executed it].) Accordingly, the face of the Assignment of Deed of Trust demonstrates IndyMac had a beneficial interest in the deed of trust and note when it substituted Quality Loan as trustee.

Second, Quality Loan's substitution as trustee after it recorded the Notice of Default would not render the Notice invalid. Civil Code section 2924, subdivision (a)(1), authorizes the "trustee, mortgagee, or beneficiary, *or any of their authorized agents*" to record a notice of default. (*Debrunner*, *supra*, 204 Cal.App.4th at p. 440, italics added.) The Notice of Default identified Quality Loan "as agent for [the] beneficiary" and further stated Quality Loan "is either the original trustee, the duly appointed substitute trustee, or acting as agent for the trustee or beneficiary under [the Longs' deed of trust]." Because it is presumed the nonjudicial foreclosure was properly conducted, the Longs bore the burden to show Quality Loan lacked authority to record the Notice of Default. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.) The Longs made no attempt to show Quality Loan did not act as the authorized agent of the beneficiary (that is, MERS) when it recorded the Notice of Default. Consequently, even if Quality Loan substituted as trustee after it recorded the Notice of Default, the Longs failed to show the Notice was defective and the foreclosure proceedings void.

---

6 A notary notarized MERS's signature on the Assignment on January 20, 2009, but the Assignment nowhere states the date on which MERS actually signed it and no other evidence clearly identifies when it was signed.

11

Third, assuming the timing of the Assignment of Trust Deed and Substitution of Trustee rendered the Notice of Default defective, the Longs failed to show that defect prejudiced their interest in the property. As explained above, a borrower's wrongful foreclosure claim fails unless the borrower shows the alleged defect in the foreclosure process prejudiced his or her interests. (*Debrunner*, *supra*, 204 Cal.App.4th at p. 443; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272; *Melendrez*, *supra*, 127 Cal.App.4th at p. 1258; *Knapp*, *supra*, 123 Cal.App.4th at p. 86, fn. 4.)

For example, the borrower in *Fontenot* argued the nonjudicial foreclosure was void because the original lender's nominee purportedly lacked authority to assign the underlying promissory note to the entity that conducted the foreclosure. The *Fontenot* court rejected this challenge because the borrower failed to show the unauthorized assignment prejudiced her interests: "As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to [the foreclosing entity] interfered in any manner with her payment of the note [citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If [the original lender's agent] indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.)

Similarly, the borrower in *Debrunner* challenged the nonjudicial foreclosure by arguing the trustee lacked authority to conduct the foreclosure because the trustee recorded the notice of default several months *before* the substitution of trustee was recorded. (*Debrunner*, *supra*, 204 Cal.App.4th at pp. 436-437, 443.) Despite this purported lack of authority, the *Debrunner* court rejected the borrower's wrongful foreclosure claim because the borrower failed to show how the lack of authority

12

prejudiced him by impairing his ability to either prevent or contest the foreclosure. (*Id*. at pp. 443-444.)

Here, the Longs likewise failed to present any evidence showing Quality Loan's purported lack of authority prejudiced them. They do not dispute they defaulted on their loan, nor do they contend Quality Loan's purported lack of authority either caused their default or prevented them from curing their default. Furthermore, it is undisputed Quality Loan had authority to conduct the nonjudicial foreclosure by the time it pursued the foreclosure process after recording the Notice of Default. The Longs concede MERS executed, notarized, and recorded the Assignment of Deed of Trust by the end of January 2009, which was well before Quality Loan recorded the Notice of Trustee's Sale in March 2009 and sold the property at public auction in July 2009. Accordingly, any question regarding Quality Loan's authority to record the Notice of Default was a mere irregularity in the proceedings and the Longs failed to show it caused them any prejudice.[7]

The Longs contend *Fontenot* and *Debrunner* do not apply here because those cases merely involved the delayed recording of documents that were nonetheless executed in the proper sequence, not documents that were improperly "backdated" to cure a lack of authority to perform steps vital to the foreclosure proceedings. The Longs misconstrue *Fontenot*'s and *Debrunner*'s significance. Although those cases did not involve improperly "backdated" documents, they unmistakably established a borrower's burden to show how the alleged defect in the foreclosure process prejudiced the

---

[7]    The Longs' burden to establish prejudice is distinct from the requirement that a borrower seeking to set aside a foreclosure sale based on irregularities in the notice or procedures must tender the full amount due on the underlying debt for which the property served as security. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.) Accordingly, the Longs' contention that exceptions to the tender rule apply in this case has no impact on their failure to establish prejudice and therefore we do not address the tender rule.

13

borrower's interests, and the Longs failed to establish the backdating of the Assignment of Deed of Trust prejudiced them.

Moreover, the Longs failed to show that designating an effective date in an assignment of trust deed that is earlier than the execution date is improper. The Longs rely on three United States District Court decisions for the proposition that the recipient of a backdated assignment of trust deed may not have authority to record a notice of default, and that any foreclosure proceeding based on a notice of default recorded by the recipient of a backdated assignment is void *ab initio*. (See *Tamburri v. Suntrust Mortgage, Inc.* (N.D.Cal. Dec. 15, 2011, C-11-2899 EMC) 2011 U.S.Dist. Lexis 144442; *Castillo v. Skoba* (S.D.Cal., Oct. 8, 2010, No. 10cv1838 BTM) 2010 U.S.Dist. Lexis 108432; *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575.) We are not bound by these foreign decisions (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155) and therefore decline to follow them because they fail to properly apply the foregoing California law. None of these federal cases offers any analysis or authority (except each other) for the conclusion "recording assignments with backdated effective dates *may be improper*." (*Ohlendorf*, at p. 583, italics added; see also *Tamburri*, at p. *12; *Castillo*, at p. *2.) Moreover, two of the three cases fail to acknowledge the borrower's burden to establish prejudice to set aside a nonjudicial foreclosure sale (*Castillo*, at p. *2; *Ohlendorf*, at p. 583), and the third case acknowledges the prejudice requirement, but concludes it does not apply because the foreclosure sale had not yet occurred (*Tamburri*, at p. *14).[8]

---

8      The Longs also cite *Ung v. Koehler* (2005) 135 Cal.App.4th 186, for the statement "'"a trustee's sale based on statutorily deficient notice of default is invalid."'" [Citations.]" (*Id*. at pp. 202-203.) That quote, however, is taken out of context because *Ung* did not involve a borrower's wrongful foreclosure claim and did not address the prejudice requirement.

14

Based on *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 (*Dimock*), the Longs also argue they had no obligation to establish prejudice because Quality Loan's lack of authority rendered the foreclosure proceedings void *ab initio*. *Dimock*, however, does not apply to the facts of this case and does not excuse the Longs from their obligation to establish prejudice.

In *Dimock*, the loan servicer recorded a notice of default in the original trustee's name, but a few months later recorded a substitution of trustee and a second notice of default in the new trustee's name. After realizing it already had recorded a notice of default, the servicer resumed the foreclosure proceedings in the original trustee's name and executed a deed upon sale in the original trustee's name without rescinding the substitution of trustee or reappointing the original trustee. (*Dimock*, *supra*, 81 Cal.App.4th at pp. 871-873.) The *Dimock* court held the trustee's deed upon sale was void on its face because the substitution of trustee transferred all of the original trustee's interests in the property to the second trustee and the original trustee therefore had no interest it could convey to the purchaser through the deed. (*Id*. at pp. 876-878.)

Contrary to the Longs' contention, *Dimock* did not find the entire foreclosure proceeding void *ab initio*. Rather, it simply voided a deed upon a trustee's sale because the trustee that executed the deed did not have an interest in the property. (*Dimock*, *supra*, 81 Cal.App.4th at p. 877 ["Given that title to property is held by the trustee under a deed of trust, it is difficult to accept the notion that one who no longer has title could nonetheless convey effective title"].) Moreover, *Dimock* did not address the prejudice requirement and its facts are readily distinguishable from our case. Here, Quality Loan was the appointed trustee when it executed and recorded both the Notice of Trustee's Sale and the Deed Upon Trustee's Sale. *Dimock* did not address procedural irregularities during intermediate steps in the nonjudicial foreclosure process and therefore does not apply.

15

Finally, the Longs argued at oral argument that they suffered prejudice when IndyMac paid the taxes on the property and then tripled their monthly mortgage payment to recoup the taxes and other charges IndyMac paid on the Longs' behalf. According to the Longs, the property tax issue was not their fault because the county erroneously billed them twice as much as it should have and IndyMac should not have paid the taxes while the Longs were working with the county to correct this purported error. The Longs, however, failed to explain how this property tax issue was an irregularity in the nonjudicial foreclosure proceedings or had an impact on Quality Loan's authority to conduct those proceedings.

*Debrunner* and *Fontenot* make clear that the Longs' wrongful foreclosure claim required an irregularity in the nonjudicial foreclosure proceedings and prejudice resulting from that irregularity. (*Debrunner*, *supra*, 204 Cal.App.4th at p. 443; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) The county's purported error in assessing the property taxes and IndyMac's payment of the delinquent taxes was not an irregularity in the nonjudicial foreclosure proceedings. Indeed, the property tax issue had nothing to do with the nonjudicial foreclosure sale or Quality Loan's authority to conduct that sale, and therefore it provided no basis for setting aside the sale.

Moreover, the Longs conceded they paid zero property taxes during the nearly four years they owned the property and the deed of trust they signed gave IndyMac the right to pay the taxes to protect its security interest in the Longs' property. IndyMac repeatedly warned the Longs for several months that it would pay the taxes if they did not. The Longs' efforts to challenge the taxes with the county neither prevented IndyMac from paying the taxes (and adding that amount to the Longs' monthly mortgage payment) nor stopped the accrual of penalties or other charges on the proper amount of the taxes (see 9 Witkin, Summary of Cal. Law (10th ed. 2005) Taxation, § 257, p. 390,

16

citing Rev. & Tax. Code, §§ 4833.1, subd. (a), 4985.4, subd. (a)).[9] IndyMac exercised a right it indisputably had under the deed of trust to pay delinquent taxes and that payment did not constitute an irregularity in the nonjudicial foreclosure proceedings nor did it prejudice the Longs.

> ### b. The Longs Failed to Show MERS's Signature on the Assignment of Deed of Trust Was Forged

The Longs also contend Quality Loan lacked authority to foreclose on their property because the signature on MERS's behalf on the Assignment of Deed of Trust was forged. According to the Longs, the forged signature rendered the Assignment void and therefore IndyMac lacked authority to substitute Quality Loan as trustee because IndyMac never received a beneficial interest in the Longs' deed of trust and promissory note. This challenge fails because the Longs do not present sufficient evidence showing the signature was forged.

Stotts signed the Assignment of Deed of Trust on MERS's behalf and a notary acknowledged his signature. The notary's acknowledgment is prima facie evidence that Stotts signed the Assignment (Evid. Code, § 1451) and Stotts testified at deposition that he signed the Assignment.[10]

---

[9]    The Longs request that we judicially notice the "Preliminary Change of Ownership Report" regarding their purchase of the property because it is relevant to the erroneous tax assessment. We deny the request because (1) the report is not relevant to the issues presented on appeal (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276); and (2) the Longs did not make the request in the trial court (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3).

[10]    The notary who acknowledged Stotts's signature on the Assignment of Deed of Trust testified she did not maintain a notary log during the time she acknowledged Stotts's signature. The Longs contend this is suspicious and supports their position that Stotts did not sign that document, but they present no authority to show the lack of a notary log invalidated the acknowledgment and nonetheless Stotts testified he signed the Assignment.

17

To support their forgery theory, the Longs submitted a declaration by Beth Chrisman, a forensic document examiner. She explained she examined 33 documents Stotts purportedly signed on MERS's behalf and concluded the signatures revealed more than one person, and possibly as many as six people, signed Stotts's name on the documents because there were "at least six distinct signature formations." Two of the documents Chrisman examined were the Assignment of Deed of Trust and a declaration Stotts filed on MERS's behalf to obtain relief from the automatic stay when the Longs filed for bankruptcy protection. Chrisman concluded "[t]wo separate individuals authored the name of Roger Stotts on [these] two documents [and t]herefore, one if not both are forgeries."

Chrisman, however, never opined Stotts's signature on the Assignment of Deed of Trust is a forgery. She conceded she did not "examine[] authenticated, known signatures of Roger Stotts" and could not determine which documents were signed "by the 'real' Roger Stotts" without a known signature. Accordingly, although Chrisman opined more than one person signed Stotts's name on the documents she examined, she stopped short of opining Stotts did not sign the Assignment of Deed of Trust and conceded she lacked the necessary information to render that opinion.

To create a triable issue of fact, a party must present evidence "'of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment. [Citation.]' [Citation.] The [opposing party] does not meet his burden of demonstrating a triable issue where his evidence merely provides 'a dwindling stream of probabilities that narrow into conjecture.' [Citation.]" (*Nardizzi v. Harbor Chrysler Plymouth Sales, Inc.* (2006) 136 Cal.App.4th 1409, 1415.) "[C]ourts are 'not bound by expert opinion that is speculative or conjectural. [Citations.] Plaintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation, or reasoning. [Citation.]' [Citation.]" (*Ibid.*; see also *Sangster v. Paetkau* (1998)

18

68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

Without a specific opinion by Chrisman that Stotts's signature on the Assignment of Deed of Trust is a forgery, the Longs' contention that document was forged is speculative and fails to create a triable issue of material fact. Because Chrisman's declaration failed to raise a triable issue concerning Stotts's signature, we need not address the parties' numerous contentions concerning Chrisman's qualifications to express an expert opinion or whether Defendants ratified the Assignment of Deed of Trust even if it was a forgery.

c.   The "Separation" of the Note and Deed of Trust Did Not Deprive Quality Loan of the Authority to Foreclose

Finally, the Longs contend IndyMac did not hold a beneficial interest in both the deed of trust and promissory note during the foreclosure process. According to the Longs, a nonjudicial foreclosure is invalid unless the foreclosing beneficiary holds both the deed of trust and the underlying promissory note. The Longs assert IndyMac did not hold both because the note was separately transferred to Deutsche Bank in August 2006, and therefore MERS's assignment to IndyMac in late 2008 did not transfer the note to IndyMac. Rather, in the Long's view, the note remained with Deutsche Bank throughout the foreclosure process and IndyMac (through Quality Loan) therefore lacked authority to foreclose under the deed of trust. The *Debrunner* court, however, recently rejected this same argument.

The *Debrunner* court explained that Civil Code sections 2924 to 2924k establish a comprehensive and exhaustive statutory framework to govern nonjudicial foreclosure sales, and therefore California courts "'have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Debrunner*, *supra*, 204 Cal.App.4th at pp. 440-441.) Because the statutes "'do[] not require a beneficial

19

interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale,'" the separation of the note and deed of trust does not prevent a party from conducting a nonjudicial foreclosure sale. (*Id*. at p. 441.) Indeed, the statutory scheme authorizes the "'trustee, mortgagee, or beneficiary, or any of their authorized agents'" to initiate nonjudicial foreclosure proceedings regardless of whether the foreclosing party holds a beneficial interest in the underlying promissory note. (*Id*. at pp. 440-441.) Accordingly, there is no legal basis for the Longs' contention that the separation of the note and deed of trust prevented Quality Loan from foreclosing on their property on IndyMac's behalf.

C.     *The Trial Court Properly Granted Summary Judgment on the Remaining Claims*

The three remaining claims are for unfair competition under Business and Professions Code section 17200, tort in se, and quiet title. The unfair competition claim alleges Defendants engaged in illegal and unfair business acts by foreclosing on the Longs' property without legal authority and based on backdated, forged, and illegally notarized documents. The tort in se claim alleges Defendants are liable to the Longs' in tort for conducting a nonjudicial foreclosure that did not comply with the nonjudicial foreclosure statutes.[11] Finally, the quiet title claim alleges the nonjudicial foreclosure was void and the trial court should therefore quiet title to the property in favor of the Longs.

---

[11]     "A 'tort in se' or 'tort in essence' is 'the breach of a nonconsensual duty owed another.' [Citation.] 'Violation of a statutory duty to another may therefore be a tort and violation of a statute embodying a public policy is generally actionable [as a 'tort in se'] even though no specific civil remedy is provided in the statute itself.' [Citation.] 'Any injured member of the public for whose benefit the statute was enacted may bring the action.' [Citation.] California courts have applied the 'tort in se' doctrine only where a specific civil remedy is unavailable for the violations of statutory duty. [Citations.]" (*Chaconas v. JP Morgan Chase Bank* (S.D.Cal. 2010) 713 F.Supp.2d 1180, 1188-1189.)

The Longs contend the evidence and arguments they presented on their wrongful foreclosure claim create triable issues of fact on each of these claims as well. As explained above, however, we conclude the evidence and argument the Longs presented on the wrongful foreclosure claim do not create triable issues of fact and the Longs provide no argument or explanation on why the result should be any different on these claims. (See, e.g., *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant forfeited challenge by failing to present reasoned argument and explanation].) Accordingly, we affirm the trial court's decision granting summary judgment on these causes of action.

## III

### DISPOSITION

The judgment is affirmed and the stay of enforcement we ordered regarding the unlawful detainer judgment is dissolved when remittitur issues from this court. Defendants shall recover their costs on appeal.

ARONSON, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

21