Filed 12/13/22  Apartment Rental Assistance II v. 80 Oak Hills CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| APARTMENT RENTAL ASSISTANCE II, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> 80 OAK HILLS, L.P., et al., <br><br> Defendants and Respondents. | F083238 <br><br> (Super. Ct. No. CV-60695) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Baker & McKenzie LLP, Perrie M. Weiner, Benjamin Turner, and Paul Chander; Chase Law & Associates and Kenneth E. Chase; Young Ward & Lothert and Scott Ward for Plaintiffs and Appellants.

Hogan Lovells US LLP, Michael L. Turrill, and Nicholas Lauridsen for Defendants and Respondents.

-ooOoo-

Plaintiffs Apartment Rental Assistance II, Inc. (ARA) and Oak Hills Housing (collectively, buyers) appeal from a postjudgment order awarding $547,465.10 in contractual attorney fees to defendants 80 Oak Hills, L.P. (Oak Hills), 80 Columbia

Village Townhomes, L.P. (Columbia Village), 60 Forest View Senior Housing L.P. (Forest View), and Highridge Costa Investors, LLC (collectively, sellers) after the trial court declared sellers the prevailing parties on their motion for summary judgment. The trial court awarded fees pursuant to an attorney fees' provision in three purchase and sale agreements (PSAs) entered into between buyers and Oak Hills, Columbia Village, and Forest View, for the purchase of three apartment complexes.

Buyers contend the attorney fees award is excessive because: (1) another contract provision that limits sellers' liability placed a ceiling on the amount of fees sellers could be awarded under the reciprocity principles of Civil Code section 1717;[1] and (2) the trial court did not apply the proper methods in calculating the fee award. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We set out the background facts of the underlying litigation in our opinion on buyers' appeal from the judgment entered after the trial court granted sellers' summary judgment motion. (*Apartment Rental Assistance II, Inc. v. 80 Oak Hills, L.P.* (December 13, 2022, F082214) [nonpub. opn.].) Those facts need not be repeated in detail here, except to say in the underlying litigation, buyers alleged breach of contract and tort claims arising from their purchase of three apartment complexes from sellers under the PSAs. After three years of litigation, sellers moved for summary judgment, which the trial court granted. The ensuing judgment in sellers' favor stated sellers were entitled to recover their costs from buyers, including their reasonable attorney fees per contract, in an amount to be determined.

Thereafter, sellers moved for an award of $23,589.25 in costs and $677,465.10 in attorney fees under the contractual attorney fees provision in the PSAs. Sellers explained they were entitled to reasonable attorney fees under section 1717 because they were the

---

[1]     Undesignated statutory references are to the Civil Code.

prevailing parties in an action involving contracts specifically providing for prevailing-party attorney fees.

Sellers asserted the proposed award was reasonable under the lodestar method: 1,481 hours billed over four years of litigation, the majority of which was billed by a Hogan Lovells partner, Michael Turrill, at a discounted rate of $650 per hour and an associate, who was a 2017 law school graduate, at rates ranging from $435 to $560 per hour.[2] These rates, sellers explained, are "customary and reasonable for attorneys with similar skill levels and experience at law firms of this size, prestige, and global presence" and were "consistent with the rates 'prevailing in the community for similar work,' " as its rates were comparable to or lower than rates charged by its peer firms in the Los Angeles and San Francisco areas.

Sellers admitted there were local attorneys in Sonora who charged lower hourly rates, but they asserted hiring such counsel was impractical as Turrill had been sellers' primary outside litigation counsel for approximately 10 years; therefore, he had a "unique and intimate knowledge of their business and the real estate business in general." Thus, while his hourly rate may be higher than local counsel, retaining him saved time that new counsel would have needed to become familiar with sellers and the complex real estate questions presented in this action. As Turrill explained in his declaration: "Based on the legal complexity, the threat to its business, and level of potential financial exposure, it was entirely appropriate and reasonable for the Seller Defendants to retain" Hogan Lovells "as opposed to a regional firm."

---

[2] Turrill listed in his declaration that accompanied the motion the work performed by the Hogan Lovells attorneys who worked on the litigation. The attorneys' contemporaneous time records were attached to Turrill's declaration. Turrill asserted buyers' conduct in the litigation substantially increased the number of hours and amount of work required to defend the matter, as sellers were required to bring multiple informal discovery hearing requests and motions to compel due to buyers' obstructive conduct, nearly all of which sellers were successful in bringing.

Buyers opposed the fee request. Buyers argued sellers were not entitled to any attorney fees because: (1) Highland was not a party to the contracts and buyers did not assert any contract claims against Highland; (2) sellers did not show they would have been required to pay buyers' fees if buyers had prevailed, as the PSAs "contain limitation of liability provisions which preclude or drastically diminish any fee award" buyers could claim against sellers; and (3) the gravamen of the litigation was outside the scope of the contractual attorney fees provision, as its core allegations were based in fraud and buyers did not sue to enforce or declare the effect of a provision in the PSAs.

Buyers argued that if the trial court ordered attorney fees, they should be "drastically reduced." Specifically, buyers argued: (1) the trial court should consider the fee schedule set forth in Superior Court of Tuolumne County, Local Rules, rule 3.09.1 (Local Rule 3.09.1); (2) the fee request was unreasonable under the lodestar method, as sellers failed to establish the reasonableness of both the hours billed, which were excessive, and the billing rates, as Turrill provided no persuasive rationale for why he ignored the rates of local attorneys and there was no evidence an effort was made to hire local counsel; and (3) the attorney fees should be apportioned between the tort and contract claims.

In reply, sellers asserted it was disingenuous for buyers to argue the attorney fees provisions did not apply because sellers did not prove buyers could recover fees under the PSAs given that buyers sought to recover attorney fees under those same provisions. Sellers further asserted buyers' "attempt to muddy the waters by citing other provisions that allegedly limit the parties' liabilities" was unpersuasive as those other provisions had nothing to do with postclosing litigation and instead related to the negotiation and closing of the transactions. Sellers argued there was no question the action was commenced to enforce or declare the effect of the PSAs' provisions; therefore, the attorney fees provisions applied and because they prevailed in the action, they were entitled to their reasonable attorney fees under section 1717.

4.

Sellers argued the fees and costs incurred were reasonable. They asserted buyers' reliance on Local Rule 3.09.1 was misplaced, as that rule only applied to default judgments. They also asserted the hours spent defending this matter were necessary and reasonable, as buyers' counsel's "dilatory and irrational litigation conduct" was the "primary reason" the defense cost what it did, and given the "hard fought nature" of the action and successful result sellers' achieved, the number of hours spent on "this lengthy and complex litigation was entirely appropriate." Sellers argued buyers' assertion that sellers' counsel presented no evidence he tried to find local counsel or that hiring local counsel would be impracticable ignored the nearly two pages of argument in sellers' motion explaining why hiring local counsel was impracticable and sellers were justified in not doing so.

After hearing argument, the trial court took the matter under submission and subsequently issued a written order granting the motion for attorney fees in the amount of $547,465.10 and $23,589.25 in costs. The trial court stated the issues presented were: (1) whether sellers were entitled to attorney fees under the PSAs' attorney fees provisions; and (2) if so, what was the reasonable amount of those fees.

On the first issue, the trial court rejected buyers' argument that certain provisions of the PSAs "are limitations on the recovery of attorneys' fees liability in this case," explaining that as sellers pointed out in their reply brief, "these paragraphs relate to attorneys' fees connected with the escrow and closing, construction defects, and events of seller's default or failure to perform conditions required for closing." The trial court agreed with sellers that paragraph 20(*l*), "which covers attorneys' fees if legal action is commenced to enforce or to declare the defect of any provision of the PSA[s]," provided a legal basis for the recovery of attorney fees to the prevailing party in this litigation, and under that provision, sellers were entitled to prevailing party attorney fees.

On the second issue, the trial court noted that "[p]arties who engage in scorched earth litigation cannot then complain about the cost of litigation if they lose," "[b]oth

5.

sides aggressively litigated matters in this case," and "extensive discovery disputes increased the cost of this litigation." Consequently, the trial court found "[h]aving engaged in these extensive discovery disputes, among other cost increasing tactics, [buyers are] not in a position to complain about the amount of time [sellers'] attorneys spent defending the case." The trial court, however, agreed with buyers that the associate attorney's rate was "not consistent with attorneys' fees charged in this County or region" and "charging in excess of $300 an hour for assembling binders" was "excessive." Therefore, the trial court reduced sellers' fee request from $677,465.10 to $547,465.10— a reduction of approximately 20 percent.

The trial court subsequently entered an amended judgment reflecting the award of attorney fees and costs.

## DISCUSSION

### I. Standard of Review

An order granting or denying an award of attorney fees after trial is reviewed under the abuse of discretion standard. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*); *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1481.) Under the abuse of discretion standard, the trial court's factual findings are reviewed under the substantial evidence standard while the court's legal conclusions are reviewed de novo. (*Soni v. Wellmike Enterprise Co. Ltd.*, at p. 1481; *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230; *Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 287–288.)

The determination of entitlement to attorney fees is reviewed de novo if based on a written contract and there is no conflict in any extrinsic evidence presented to clarify or interpret the contract. (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507; see *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 ["When no extrinsic evidence is

6.

introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract."]; see also *Mountain Air, supra*, 3 Cal.5th at p. 751 [entitlement to fees is reviewed de novo if material facts are not in dispute].)

"The normal rules of appellate review apply to an order granting or denying attorney fees; i.e., the order is presumed correct, all intendments and presumptions are indulged to support the order, conflicts in the evidence are resolved in favor of the prevailing party, and the trial court's resolution of factual disputes is conclusive." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017.) "The reviewing court will infer all findings necessary to support the order, and all findings, express or implied, are reviewed under the substantial evidence standard." (*Ibid.*)

## II. Reciprocal Liability for Attorney Fees

Attorney fees are recoverable as costs when authorized by contract. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10)(A).) Code of Civil Procedure section 1021 leaves the "measure and mode of compensation" for attorney fees to the agreement of the parties. "[A]ny inquiry begins with the language of the attorney fees provision itself." (*Mountain Air, supra*, 3 Cal.5th at p. 760.)

Section 1717 governs fee awards for contractual fee-shifting clauses when an action is on a contract. Section 1717, subdivision (a) awards attorney fees in "any action on a contract," when the contract provides for an award of attorney fees, to "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not." The statute "makes an otherwise unilateral attorney fee provision reciprocal and entitles a noncontracting party to recover contractual attorney fees when it defeats a contract-based cause of action that would have made the noncontracting party liable for contractual attorney fees had it lost." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 814–815.)

"[T]o invoke section 1717 and its reciprocity principles a party must show (1) he or she was sued on a contract containing an attorney fee provision; (2) he or she prevailed

on the contract claims; and (3) the opponent would have been entitled to recover attorney fees had the opponent prevailed." (*Brown Bark III, L.P. v. Haver*, *supra*, 219 Cal.App.4th at p. 820.)

Buyers do not dispute sellers were sued on a contract containing an attorney fee provision or that sellers prevailed on the contract claims. Rather, they claim sellers failed to prove the third element. Despite the fact the attorney fees provision in paragraph 20(*l*) of the PSAs specifically provides for the reciprocal recovery of "reasonable attorneys' fees" on any action "to enforce or to declare the effect of any provision" of the PSAs,[3] buyers argue sellers failed to show buyers would have been entitled to recover attorney fees had buyers prevailed.

In support of their argument, buyers rely on paragraph 20(p)(i) of the parties' PSAs, which limits "the maximum aggregate liability of Seller, and the maximum aggregate amount which may be awarded to and collected by Buyer (including, without limitation, for any breach of any representation, warranty and/or covenant by Seller) under this Agreement" to a total of $200,000 for all three PSAs, comprised of $75,000 on the Oak Hills and Columbia Village PSAs, and $50,000 on the Forest View PSA.[4]

---

[3]      Paragraph 20(*l*) of the PSAs provides in full: "If legal action is commenced to enforce or to declare the effect of any provision of this Agreement, or any document executed in connection with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and other litigation costs. In addition to the foregoing award of attorneys' fees to the prevailing party, the prevailing party in any lawsuit on this Agreement or any document executed in connection with this Agreement shall be entitled to its reasonable attorneys' fees incurred in any post judgment proceedings to collect or enforce the judgment. This provision is separate and several and shall survive the merger of this Agreement or any document executed in connection with this Agreement into any judgment on this Agreement or any document executed in connection with this Agreement. This provision shall survive Closing or termination of this Agreement."

[4]      Paragraph 20(p) of the Oak Hills PSA provides in its entirety: "Notwithstanding anything to the contrary contained in this Agreement and/or any of the 'Other Documents' (as hereinafter defined), after the Closing: (i) the maximum aggregate liability of Seller, and the maximum aggregate amount which may be awarded to and collected by Buyer (including, without limitation, for any breach of any representation,

Buyers reason that had they prevailed on their contract claims, paragraph 20(p)(i) would have limited their damages *and* attorney fees to a "maximum aggregate amount" of $200,000 on all three PSAs, so under section 1717's reciprocity principal, sellers are limited to a maximum of $200,000 in attorney fees.

The resolution of this issue requires interpretation of the PSAs, which we independently review. (*Hanna v. Mercedes-Benz USA, LLC*, *supra*, 36 Cal.App.5th at p. 507 [in the absence of a conflict in extrinsic evidence, the interpretation of a written instrument is reviewed de novo].) Buyers assert reversal is required because the trial court failed to address whether sellers showed buyers were reciprocally entitled to attorney fees under the PSAs. But since our review is de novo and we imply all findings necessary to support the trial court's order, it does not matter whether the trial court directly addressed this issue in its written order. Moreover, the trial court did expressly reject buyers' argument that paragraph 20(p) limited the recovery of attorney fees.

Paragraph 20(p)(i) provides "the maximum aggregate liability of Seller, and the maximum aggregate amount which may be awarded to and collected by Buyer

---

warranty and/or covenant by Seller) under this Agreement or any documents executed pursuant hereto or in connection herewith, including, without limitation, the Deed, the Bill of Sale, and the Assignment and Assumption (collectively, the 'Other Documents'), shall under no circumstances whatsoever exceed an amount equal to Seventy-Five Thousand Dollars ($75,000); and (ii) no claim by Buyer alleging a breach by Seller of any representation, warranty and/or covenant of Seller contained in this Agreement or in any of the Other Documents may be made, and Seller shall not be liable for any judgment in any action based upon any such claim, unless and until such claim, either alone or together with any other claims by Buyer alleging a breach by Seller of any such representation, warranty and/or covenant is for an aggregate amount in excess of Ten Thousand Dollars ($10,000.00) (the 'Floor Amount'), in which event Seller's liability respecting any final judgment concerning such claim or claims shall be for the entire amount thereof, subject to the limitation set forth in clause (i) above; provided, however, that if any such final judgment is for an amount that is less than or equal to the Floor Amount, then Seller shall have no liability with respect thereto." Paragraph 20(p) of the Columbia Village PSA is identical to the one in the Oak Hills PSA, while the Forest View PSA limits "the maximum aggregate liability of Seller, and the maximum aggregate amount which may be awarded to and collected by Buyer" to $50,000.

9.

(including, without limitation, for any breach of any representation, warranty and/or covenant by Seller) under this Agreement … shall under no circumstances whatsoever exceed" the amount set out in each PSA, which is $75,000 in the Oak Hills and Columbia Village PSAs, and $50,000 in the Forest View PSA. The issue is whether the "maximum aggregate liability of Seller" and "maximum aggregate amount which may be awarded to and collected by Buyer" includes an award of attorney fees.

Buyers contend "maximum aggregate amount" has only one meaning—to limit the total amount that may be awarded for all forms of recovery—and the addition of the clause "which may be awarded to and collected by Buyer" shows the "maximum amount was meant to include all forms of recovery, whether they are 'awarded' as attorneys' fees or 'collected' through a judgment." Buyers assert because paragraph 20(p)(i) specifies its limitation "shall under no circumstances whatsoever" be exceeded, the contracting parties did not intend the attorney fees provision in paragraph 20(l) to override the limitation and shows they mutually intended the cap to apply in all instances and to all forms of recovery. Acknowledging that the contract must be read as a whole, buyers read the PSAs as allowing them, if they prevailed in an action against sellers, to seek reasonable attorney fees under paragraph 20(l) subject to paragraph 20(p)'s limitations on recovery.

Sellers respond that paragraph 20(p)(i) was intended to only limit the seller's "maximum aggregate liability" for damages, not buyers' ability to collect reasonable attorney fees. Sellers assert because the clause "maximum aggregate amount which may be awarded to and collected by buyer" is embedded in the sentence limiting the seller's "maximum aggregate liability," the " 'maximum aggregate amount' clause is better understood as a belt-and-suspenders clause limiting Seller's liability." Sellers claim that paragraph 20(p)(ii) buttresses this interpretation, as it provides a buyer cannot bring a claim for a seller's breach of any representation, warranty or covenant contained in the PSA unless "such claim, either alone or together with any other claims by Buyer alleging a breach by Seller of any such representation, warranty and/or covenant is for an

10.

aggregate amount in excess of" $10,000. Sellers argue this shows paragraph 20(p) is concerned with aggregate liability for claims, not attorney fees awards. Sellers assert that if the parties intended to cap an attorney fees award "to an arbitrarily low amount," they would not have inserted an independent provision in paragraph 20(*l*), which allows the prevailing party to recover "reasonable attorneys' fees," since the use of the word "reasonable" typically calls for attorneys to be fully compensated for their work.

Because the parties dispute the meaning of contract language, we apply the well-settled rules of contract interpretation. The fundamental objective of contract interpretation is to give effect to the mutual intention of the parties. (§ 1636; *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1356 (*Wolf*).) When the contract is a written one, the parties' intention is determined from the writing alone, if possible. (§ 1639; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, *supra*, 109 Cal.App.4th at p. 955.) "The words of a contract are to be understood in their ordinary and popular sense …." (§ 1644; see *Jenkins v. Valley Oil Co.* (1964) 226 Cal.App.2d 41, 45 ["In California the rule is that '[t]he terms of a writing are presumed to have been used in their primary and general acceptation,' " quoting Code Civ. Proc., § 1861]; *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 851–852 [" 'A contract must receive such an interpretation as will make it … reasonable … if it can be done without violating the intention of the parties,' " quoting § 1643].) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the other." (§ 1641.)

Viewing the language of paragraph 20(p)(i) in context, we conclude sellers' interpretation is correct and this provision does not limit an award of attorney fees to buyers. Subparagraph (i) addresses the scope of seller's liability for claims brought under the PSA and any documents executed in connection with it, as shown by the term "maximum aggregate liability of Seller." That the seller's liability only encompasses claims for damages, not attorney fees, is apparent in subparagraph (ii), which explains the

buyer's claims for "breach by Seller of any representation, warranty and/or covenant of Seller contained in this Agreement" must be for an "aggregate amount" over $10,000, and "Seller's liability respecting any final judgment concerning such claim or claims shall be for the entire amount thereof, subject to the limitation set forth in clause (i) above." The use of the term "claim or claims" in subparagraph (ii) informs the "maximum aggregate liability" term in subparagraph (i), as well as "the maximum aggregate amount which may be awarded to and collected by Buyer" clause, and indicates those amounts are based on aggregate damage awards for claims of sellers' liability under the PSA, not claims or awards for attorney fees.

In addition, we "must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative[,] or meaningless." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473.) If paragraph 20(p) limited buyers' ability to recover attorney fees, that would render the attorney fees provision of paragraph 20(*l*) inoperative or meaningless. Under buyers' interpretation of paragraph 20(p), if they prevailed on their breach of contract claims against sellers and were awarded more than $200,000, their damages would be limited to $200,000 and they would not be able to recover *any* attorney fees or litigation costs. But paragraph 20(*l*) specifically entitles the prevailing party "to recover from the non-prevailing party reasonable attorneys' fees and other litigation costs," as well as reasonable attorneys' fees incurred in any postjudgment proceeding to collect or enforce the judgment. Had the parties intended to limit the amount of attorney fees awardable to sellers, they would have so specified in the attorney fees provision, rather than state the prevailing party may recover reasonable fees. In order to give full effect to the attorney fees provision's allowance for the recovery of reasonable fees and costs, as well as reasonable attorney fees incurred in collecting or enforcing the judgment, paragraph 20(p) must be read as limiting only the amount that

12.

could be awarded as damages, while attorney fees are awardable, limited only by their reasonableness, under paragraph 20(*l*).

Since paragraph 20(p) does not limit buyers' ability to recover attorney fees, and the attorney fees provision in paragraph 20(*l*) provides for reciprocal recovery of attorney fees, buyers' argument that sellers failed to show buyers would have been entitled to recover attorney fees had they prevailed necessarily fails.

## III.     Award of Attorney Fees

Sellers requested attorney fees of $677,465.10 for 1,481 hours of work, based primarily on work billed by Turrill at a discounted rate of $650 per hour and an associate attorney at hourly rates ranging from $435 to $560 per hour. The trial court found buyers could not complain about the amount of time sellers' attorneys spent defending the case as buyers engaged in extensive discovery disputes and other tactics that increased the cost of the litigation. The trial court, however, reduced the award based on the hourly rate charged. The trial court agreed with buyers that 41 percent of the 1,481 hours billed were attributable to an associate attorney who passed the bar in 2017 but was billed at rates that were inconsistent with attorney fees being charged "in this County or region." The trial court also agreed with buyers that a charge over $300 per hour for assembling binders was excessive.[5] The trial court awarded attorney fees to sellers totaling $547,465.10—a $130,000 reduction—without stating what hourly rates it was applying.

Buyers challenge several aspects of the trial court's attorney fee award, but each argument comes down to the contention the trial court failed to clearly explain how it arrived at the final amount awarded. Buyers contend the trial court did not apply the lodestar method because it failed to: (1) explicitly determine how many hours were reasonably expended; (2) state the hourly fee it was applying; (3) explicitly determine whether hiring local counsel was impractical; (4) state it considered Local Rule 3.09.1;

---

[5]     Buyers asserted in their opposition that someone named Winston spent 57.3 hours making binders at a billing rate of $325 to $390 per hour.

and (5) "provide a mathematical calculation or discernible basis to demonstrate how it arrived at the total attorneys' fee award."

However, a court's failure to provide a "reasoned explanation" for an attorney fee award does not constitute reversible error; a superior court is not required to issue a statement of decision for a fee award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) Because we indulge all intendments and presumptions in support of the judgment on which matters are silent and error must be affirmatively shown, "we cannot reverse an attorney fee award solely for lack of an explanation by the trial court. We can reverse only if the record contains some indication that the trial court considered improper factors or did, indeed, simply snatch its award 'from thin air.' " (*Save Our Uniquely Rural Community Environment v. County of San Bernadino* (2015) 235 Cal.App.4th 1179, 1189–1190; see *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*) ["The absence of an explanation of a [fee award] ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission."].)

### A.      The Lodestar Calculation

The standard for calculating attorney fee awards under California law is well-settled. It "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate…. The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) In calculating the lodestar, "[t]he reasonable hourly rate is that prevailing in the community for similar work." (*Ibid.*) "[T]he trial court has broad authority to determine the amount of a reasonable fee. (*Ibid.*)

Here, it is apparent from the trial court's order that it applied the lodestar method when awarding attorney fees. The trial court identified the number of hours defense counsel billed—1,481—which it determined was reasonable given the nature of the litigation. While the trial court did not state what hourly rate it applied to those hours, the trial court explicitly rejected the associate attorney's hourly rate that ranged from $435 to $560 per hour because it was not consistent with attorney fees charged in the community and the in excess of $300 per hour rate for assembling binders. The trial court reduced the attorney's fees claimed by $130,000. The result was an average hourly rate of $370 when dividing the amount awarded ($547,465.10) by the hours billed (1,481), which was well below the $650 per hour billed by the partner.

Buyers' assertion there was no reasonable basis for the trial court's decision is meritless. (See *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [reversal is required where "there is no reasonable basis for the trial court's award of attorney fees"].) "The experienced trial judge is the best judge of the value of professional services rendered in his or her court. [Citation.] Accordingly, the trial court's ruling will not be disturbed unless the appellate court is convinced that it is wrong. [Citation.] In other words, the trial court's exercise of discretion will be reversed only if its decision 'exceeded the bounds of reason,' i.e., it was arbitrary, capricious, or patently absurd." (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1240.) Here, the trial court's order was not arbitrary, capricious, or patently absurd.

Buyers compare the trial court's order to an attorney fee award reversed by the appellate court in *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140. There, the trial court ignored unrebutted evidence the claimed hourly rates were within the range charged by attorneys engaged in similar areas of practice and were appropriate and reasonable for the city where the litigation took place, as well as the opposing counsel's concession he was not challenging the claimed rates. Instead of accepting those rates, the trial court reduced them to $250 based solely on a local rule of court

capping the hourly fees for attorney expert testimony. (*Id.* at p. 155.) The appellate court held the trial court abused its discretion because the fee claimant's unrebutted evidence "compelled a finding that the requested hourly rates were within the reasonable rates for purposes of setting the base lodestar amount." (*Id.* at pp. 155–156.) In so finding, the appellate court observed "there is no indication that in ascertaining the reasonable hourly rate, the court engaged in the relevant objective analysis: to determine the prevailing rate in the community for *comparable* professional legal services …. Rather, the court arbitrarily relied upon what it considered to be a reasonable rate for generic expert attorney testimony fixed by" the local rule. (*Id.* at p. 156.)

Unlike in *Graciano*, there is nothing to suggest the trial court here ignored unrebutted evidence that compelled an award of a particular hourly rate. Instead, the trial court weighed the evidence before it and reduced the fees after determining rates charged for the associate attorney and preparing binders were excessive. This provided a reasonable basis for the trial court's reduction in the amount of attorney fees awarded. Contrary to buyers' assertion, *Graciano* does not stand for the proposition that a trial court abuses its discretion by not placing all of its analysis in its order.

Buyers argue for the first time in their reply brief that the trial court approved the attorney fees award for an improper reason—to punish them "for allegedly causing the workload of the case to increase"—which they assert is evident from the trial court's stated reasoning and its failure to state it reviewed the billing records. Buyers point to specific entries in the billing records they assert show the billed time was unreasonably inflated, including blocked billing, which they argue should have caused the trial court to reduce the billable hour demand.

We need not consider these arguments as appellate courts have concluded issues first raised in a reply brief will not be considered absent a showing of good cause for delay. "Consistent with well-established authority, absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a

16.

reply brief." (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3.) "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [declining to consider an argument raised for the first time in a reply brief].) As buyers failed to raise these issues in their opening brief and have not shown good cause for failing to assert them earlier, we do not consider the arguments.[6]

### B.    The Impracticability of Hiring Local Counsel

Buyers next contend the trial court erred because it awarded attorney fees based on out-of-town rates without finding hiring local counsel was impracticable. In setting the lodestar, "[t]he general rule is '[t]he relevant "community" is that *where the court is located*,' " unless the party claiming fees demonstrates that hiring local counsel was impracticable or local counsel was not available. (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 285–286, italics added.) If the party claiming fees can show either of these, "the trial court is not limited to the use of local rates and may instead use the hourly rate of out-of-town counsel from a higher fee market in calculating the lodestar amount." (*Id.* at p. 286.) To justify the fees of out-of-town counsel, the party seeking fees need only make a good faith effort to find local counsel, although "the failure to solicit local counsel is not necessarily fatal to proving unavailability." (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 249; *Horsford v. Board of Trustees of California State University*

---

[6]    Even if we were to consider the arguments, we disagree with buyers' characterization of the trial court's reasoning. Rather than stating it was punishing buyers, the trial court stated the reality that if a party engages in "scorched earth litigation," as it found buyers did here, the time billed on the case would increase for both parties and result in higher litigation costs. In that situation, buyers cannot complain that sellers' attorneys spent excessive time defending the case, as that time was necessarily incurred due to the nature of the litigation. In so reasoning, the trial court engaged in an "objection determination" of the value of sellers' attorneys' services. (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.)

(2005) 132 Cal.App.4th 359, 399.)  Rather, it is sufficient to prove "either unwillingness *or* inability due to lack of experience, expertise, or specialization." (*Barjon v. Dalton* (9th Cir. 1997) 132 F.3d 496, 501–502.)

Noting that "there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957), sellers assert the trial court's order can be fairly interpreted as deciding not to apply defense counsel's home-market rates. While the trial court did not mention the amount charged for Turrill, the trial court rejected the associate attorney's rate as inconsistent with the local rate and buyers argued in their opposition that the partner's rate exceeded the local rate. The trial court's apparent concern with the local rate and its reduction of the award by nearly 20 percent is consistent with the court calculating Turrill's portion of the fee award using the local rate. We agree with sellers that it would be strange for the trial court to reduce the hourly rate of one attorney on the team to bring it in line with local rates but not the other attorneys. Thus, it appears the reduction was intended to reduce the rates of all attorneys. Although neither party produced evidence of the prevailing market rates in Tuolumne County, the trial court "may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.)

Even if the trial court awarded fees based on higher out-of-town rates, our review of the record convinces us it would not be an abuse of discretion for the trial court to find sellers made the requisite showing. Sellers' attorney, Turrill, submitted a declaration in which he stated he had been an attorney practicing civil, complex commercial, and business litigation in the Los Angeles area and throughout California for 24 years, and his hourly rate for this matter was $650, which was substantially discounted from his standard hourly rate. Both sellers and buyers were sophisticated business entities—buyers were based in Los Angeles and New York, and represented by attorneys from

18.

Washington D.C., while sellers were based in Los Angeles, and represented by attorneys from Los Angeles and San Francisco.

Turrill explained why equivalent local counsel was unavailable: "I have been representing Highridge-Costa Investors, LLC and its various affiliates, including the Seller Defendants herein, as one of their primary outside litigation counsel in various jurisdictions for more than ten years. Because of this long relationship I have a unique and intimate knowledge of their business and the real estate industry in general. Accordingly, while my per hour rate may be higher than local counsel in Sonora, the value I and my team provide to [sellers] reduces their legal and financial risk and exposure, and also saved time that new counsel would have needed to spend getting familiarized with [sellers] and the complex real estate questions presented in this action. Based on the legal complexity, the threat to its business, and level of potential financial exposure, it was entirely appropriate and reasonable for [sellers] to retain me and my team to defend [them] in this matter as opposed to a regional firm. Unlike [buyers], we also chose not to hire local counsel in Sonora in order to reduce the total fees and costs incurred."

Buyers contend a finding of impracticability cannot be based solely on the declaration of sellers' attorney. Rather, they argue, a declaration is required from the sellers themselves showing they made a good faith effort to find local counsel. They describe Turrill's declaration as "self-serving" and assert he fails to mention whether sellers themselves searched for any other local counsel. Buyers contend having a " 'long relationship' " with a client and having " 'unique and intimate knowledge' " of their operations is insufficient to meet the standard to allow use out-of-town rates.

In making this argument, buyers focus on the lack of evidence concerning sellers' efforts to find local counsel, citing *Horsford*, in which this court stated the party claiming fees need only show a " 'good-faith effort to find local counsel' " to justify the fees of out-of-town counsel. (*Horsford v. Board of Trustees of California State University*,

19.

*supra*, 132 Cal.App.4th at p. 399; see *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1243–1244 [plaintiff failed to make adequate threshold showing that hiring local counsel was impracticable; while she was concerned about her ability to find adequate representation, she made no effort to retain local counsel].)

But, as we have stated, it is not necessary to show attempts to contact local attorneys. For example, in *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, a plaintiff's declaration stating the plaintiffs were required to obtain out-of-town counsel because there were no local attorneys in San Bernardino County who regularly practiced environmental law on behalf of environmental groups, would work on a contingent or reduced rate basis, and possessed sufficient expertise, was a sufficient showing that the plaintiffs acted in good faith and hiring qualified counsel in the area was impracticable. (*Id.* at pp. 618–619.)

Here, Turrill's declaration showed he had an established relationship with sellers that gave him "unique and intimate knowledge" of their business and the real estate industry that local counsel would not have, and which necessitated his representation of them in this litigation. While it may be unusual to rely solely on a declaration from the attorney representing the party claiming fees to show it was impractical to hire local counsel, under the circumstances of this case, we find it sufficient. The "threshold showing of impracticability … is not onerous," and Turrill's declaration is sufficient and competent evidence that sellers acted in good faith and hiring qualified counsel in Tuolumne County was impracticable. (*Center for Biological Diversity v. County of San Bernardino*, *supra*, 188 Cal.App.4th at p. 618.) Under these circumstances, sellers were not required to produce more detailed evidence, such as evidence of contacts to numerous attorneys who refused the case. Notably, buyers did not adduce any evidence suggesting qualified local counsel was available.

## C.    *Local Rule 3.09.1*

Buyers argue the trial court failed to consider Local Rule 3.09.1 in making its award, which provides:  "**Attorney's Fees:**  In actions on promissory notes and contracts providing for the payment of attorney's fees, whenever a prevailing party is entitled to recovery of reasonable attorney's fees, the following schedule shall be considered by the Court, in its discretion, in awarding such fees:  [¶] 25% of the first $1,000; [¶] 20% of the next $4,000; [¶] 15% of the next $5,000; [¶] 10% of the next $10,000; [¶] 5% of the next $30,000; and [¶] 2% of the amount over $50,000."  Buyers argue that because this local rule states the schedule "shall be considered by the Court," the trial court was required to consider awarding attorney fees in line with these amounts and because its order does not mention that it considered the schedule, it "abused its discretion by failing to follow the required procedure."

Buyers' contention is meritless.  First, by its terms, the local rule specifically gives the trial court discretion to apply the schedule as it sees fit.  And while the trial court did not expressly cite the local rule in its order, its application of the lodestar method means it obviously rejected using this fee schedule.  To the extent the trial court was required to consider the fee schedule, since we indulge all intendments and presumptions to support the judgment on matters to which the record is silent (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140), and there is nothing in the record to suggest the trial court refused to consider the fee schedule, we presume the trial court reviewed the fee schedule and rejected it.  And even if the trial court refused to consider the fee schedule, buyers cannot show prejudice.  Since sellers obtained a defense verdict that resulted in no monetary judgment, the trial court could not use the schedule to calculate fees and buyers fail to explain how the trial court would utilize the schedule in this situation.

Buyers assert the attorney fee award was "particularly unreasonable" given the trial court apparently granted summary judgment on the ground that damages were "immaterial."  They argue the award is excessive because sellers' "success was in

21.

defeating claims for which—at least according [to sellers] and the trial court—the potential exposure for damages was virtually zero." Buyers, however, do not cite any authority to support their assertion that when a complete defense verdict is obtained, the defendant is not entitled to recover all reasonably incurred attorney fees. The buyers' reliance on *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989–990 and *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 344 for the proposition that the court must consider the significance of the overall relief the prevailing party obtained when awarding attorney fees is misplaced, as those cases were addressing an award of fees to a *partially* prevailing party. Here, sellers obtained a verdict in their favor on all claims buyers asserted against them.

Ultimately, we must view the trial court's decision through the lens of the governing standard of review. We have no authority to substitute our decision for that of the trial court. (*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1481–1482.) " 'The trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that it is clearly wrong.' " (*Ibid.*)

For all the reasons we have discussed, there is no basis for concluding the trial court abused its discretion in its attorney fee award to sellers.

## DISPOSITION

The June 22, 2021 postjudgment order is affirmed. Costs on appeal are awarded to respondents.

DE SANTOS, J.

WE CONCUR:

POOCHIGIAN, ACTING P. J.

SMITH, J.

22.